United States Courts
Southern District of Texas
FILED

*September 07, 2023*

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | **Criminal No. 4:23-cr-00415** |
| **v.** | § | |
| | § | |
| **SHALONDRIA SIMPSON,** | § | |
| **LASHONDRIA SIMPSON-CAMP, M.D.,** | § | |
| **and SHAYLA BRYANT,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**INDICTMENT**</u>

The Grand Jury charges that:

<u>**GENERAL ALLEGATIONS**</u>

At all times relevant to this Indictment, unless otherwise specified,

<u>**Entities**</u>

1.      Advance Pharmacy, LLC ("Advance"), was a pharmacy licensed in the State of Texas, located in Houston, in the Southern District of Texas.  Advance filled prescriptions for injured federal United States Postal Service ("USPS") workers who had benefits through the U.S. Department of Labor, Office of Workers' Compensation ("DOL-OWCP").

2.      Eclectic Rx Consulting Inc., doing business as TruCare Pharmacy ("TruCare"), was a pharmacy licensed in the State of Texas, located in Houston, in the Southern District of Texas. Like Advance, TruCare also filled prescriptions, often for injured USPS workers who had benefits through DOL-OWCP.

3.      Accuhealth Injury & Wellness ("Accuhealth") was a medical clinic located in Richardson, Texas.

4.      Wellistics Conditioning Center L3C ("Wellistics") was a medical clinic located in Saint Rose, Louisiana.

5.      L. Camp, LLC, doing business as Tru Essence Cosmetic & Medical Spa ("Tru Essence"), was a spa located in Houston, in the Southern District of Texas.

**Defendants and Individuals**

6.      Defendant **SHALONDRIA SIMPSON**, a resident of Houston, Texas, was a pharmacist licensed in the State of Texas.  She owned Advance, TruCare, and Tru Essence.

7.      Defendant **LASHONDRIA SIMPSON-CAMP, M.D.**, a resident of Allen, Texas, was a physician licensed to practice in the State of Texas.  She owned Accuhealth and, along with her sister **SHALONDRIA SIMPSON**, owned and controlled Tru Essence.

8.      Defendant **SHAYLA BRYANT**, a resident of Houston, Texas, was a pharmacist licensed in the State of Texas.  She was the Pharmacy Business Manager at Advance and TruCare.

9.      Griselda Adams owned and operated Wellistics.

10.      Physician 1 was a physician licensed in the State of Texas practicing in Houston. Medical Assistant 1 was a Houston-based medical assistant employed by Physician 1.

**Accounts**

11.      The following bank accounts, among others, were used throughout the operation of the scheme described below:

| Bank | Account Ending | Account Name | Authorized Signer |
|------|---------------|--------------|-------------------|
| BB&T | *4717 | Advance Pharmacy ("Advance Operating Account") | **SHALONDRIA SIMPSON** |
| BB&T | *7247 | Eclectic Rx Consulting Inc DBA: TruCare Pharmacy ("TruCare Operating Account") | **SHALONDRIA SIMPSON** |
| BB&T | *1688 | L Camp LLC DBA: TruEssence Cosmetic & Medical Spa ("TruEssence Account") | **SHALONDRIA SIMPSON** and **LASHONDRIA SIMPSON-CAMP, M.D.** |

## The Federal Employee's Compensation Act

12.     The Federal Employee's Compensation Act ("FECA") paid workers' compensation benefits to federal employees, including USPS employees, who suffered an injury, disease, or death in the performance of duty.  An injured federal worker insured under FECA was generally referred to as a "claimant."

13.     FECA was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

14.     FECA paid for, among other things, necessary medical care and prescription and pharmaceutical drugs on behalf of claimants for injuries sustained during the claimants' work for the federal government.  FECA would not pay claims submitted by a pharmacy for prescriptions for drugs that FECA knew, among other things, (1) were medically unnecessary for the treatment of the claimant's specific medical needs, or (2) were the result of a violation of the federal Anti-Kickback Statute.

15.     DOL-OWCP administered the benefits under FECA.  Health care providers ("providers"), intending to provide health care services and items to claimants, were required to enroll with DOL-OWCP to receive a provider identification number and reimbursement under FECA.  Form OWCP-1168 was used for enrollment and updating provider information.  By completing and submitting Form OWCP-1168, a provider certified that all the federal and state licensure and regulatory requirements applicable to their provider type were satisfied.

16.     DOL-OWCP contracted with Affiliated Computer Services ("ACS") to provide medical claims processing and payments.  ACS served as the billing administrator for FECA.  In

this capacity, ACS received provider enrollment forms from prospective FECA providers, assigned provider numbers, and processed and paid claims for benefits under FECA.

17.     All providers who enrolled with DOL-OWCP did so through ACS.  Once enrolled, a provider was given access to the ACS online system.  Through this ACS system, a provider could submit claims, check the status of pending claims, and perform other billing-related functions.  A provider could submit bills using either the ACS provider number or the provider's Social Security number.

18.     Providers were required to identify themselves on each claim submitted for services provided.  All claims submitted were required to be supported by medical evidence.  The submission of a claim and acceptance of payment by a provider signified that the service for which reimbursement was sought was performed as described, medically necessary and appropriate, and properly billed in accordance with accepted industry standards.  FECA paid claims for prescriptions on behalf of beneficiaries to the pharmacy's financial institution by wire, check, and electronic transfer.

## The Scheme and Artifice

19.     Beginning in or around 2016, and continuing through in or around 2022, **SHALONDRIA SIMPSON**, **LASHONDRIA SIMPSON-CAMP, M.D.**, **SHAYLA BRYANT**, and co-conspirators known and unknown to the Grand Jury, engaged in a scheme and artifice to defraud the United States and FECA by submitting and causing the submission of false and fraudulent claims for prescription drugs to FECA.  Those claims were often medically unnecessary and induced by kickbacks and bribes.  To conceal the fraud, the defendants and their co-conspirators engaged in monetary transactions with the scheme's proceeds designed to disguise and conceal their nature, location, source, ownership, and control.

4

**Operation of the Scheme**

20.     Beginning in or around 2016, and continuing through in or around 2022, **SHALONDRIA SIMPSON**, **LASHONDRIA SIMPSON-CAMP, M.D.**, **SHAYLA BRYANT**, and co-conspirators known and unknown to the Grand Jury, operated a scheme and artifice in the following ways, among others:

*Fraudulently Maximizing Reimbursements*

21.     Advance and TruCare were enrolled with DOL-OWCP as pharmacy providers. FECA paid Advance's and TruCare's claims to the Advance Operating Account and the TruCare Operating Account, respectively, which **SHALONDRIA SIMPSON** controlled.

22.     **SHALONDRIA SIMPSON** and **SHAYLA BRYANT** used false and fraudulent means to maximize prescription-drug reimbursements from FECA. **SHALONDRIA SIMPSON**, **SHAYLA BRYANT**, and other Advance and TruCare employees acting at their direction identified high-reimbursing drugs by submitting "test claims" to DOL-OWCP to determine reimbursements for a given drug.

23.     "Test claims" were false and fictitious claims that did not reflect an actual prescription—the claims were not for a real prescription authorized by a prescriber for a claimant, although the test claims often fraudulently used real claimants' personal identifying information— but rather were claims submitted for learning the reimbursements rates from FECA for certain drugs.  After learning the reimbursement rate, **SHALONDRIA SIMPSON**, **SHAYLA BRYANT**, and Advance and TruCare employees acting at their direction reversed the test claims, and used the reimbursement rate information to identify high-reimbursement drugs to fraudulently bill to FECA.

24.     **SHALONDRIA SIMPSON**, **SHAYLA BRYANT**, and others known and unknown to the Grand Jury identified and formulated high-reimbursing drugs, and created, and caused to be created, pre-printed prescription pads listing these high-reimbursing drugs.  These prescriptions, as defendants knew and intended, contained ingredients or specific formulations selected based on the DOL-OWCP reimbursement—ascertained through "test claims"—not claimants' medical needs.  The high-reimbursing drugs were often identical or nearly identical to generic or less expensive, over-the-counter drugs.

25.     **SHALONDRIA SIMPSON**, **SHAYLA BRYANT**, and other Advance and TruCare employees sent these pre-printed prescription pads, listing high-reimbursing drugs, to **LASHONDRIA SIMPSON-CAMP, M.D.**, Medical Assistant 1, Griselda Adams, and others for them to issue prescriptions to claimants, often regardless of the claimants' medical need.

26.     **SHALONDRIA SIMPSON** and **SHAYLA BRYANT** instructed, and caused others to instruct, **LASHONDRIA SIMPSON, M.D.**, her nurse practitioner at Accuhealth, prescribers at Wellistics, and other prescribers which drugs to prescribe to claimants.

27.     **SHALONDRIA SIMPSON**, **SHAYLA BRYANT**, and other Advance and TruCare employees, on occasion, submitted claims to DOL-OWCP for prescriptions that were not dispensed or that were not dispensed as billed.

28.     Between in or around January 2016, and May 2022, Advance and TruCare billed FECA approximately $170 million for prescription drugs.  FECA paid Advance and TruCare approximately $53 million on those claims.

*Kickbacks and Bribes*

29.     As part of the scheme, **SHALONDRIA SIMPSON** and **SHAYLA BRYANT** offered and paid others—including **LASHONDRIA SIMPSON-CAMP, M.D.**, Griselda Adams,

and Medical Assistant 1—in exchange for the referral of prescriptions, billable to FECA, to Advance and TruCare.

30.     To induce **LASHONDRIA SIMPSON-CAMP, M.D.**, to refer prescriptions for high-reimbursing drugs, billable to FECA, to Advance and TruCare, **SHALONDRIA SIMPSON** offered to pay, and paid, $1.65 million in kickbacks and bribes to **LASHONDRIA SIMPSON-CAMP, M.D.**, so that **LASHONDRIA SIMPSON-CAMP, M.D.**, could purchase Accuhealth with the understanding that, in exchange for these kickbacks and bribes, **LASHONDRIA SIMPSON-CAMP, M.D.**, would refer prescriptions payable by FECA to Advance and TruCare.

31.     **LASHONDRIA SIMPSON-CAMP, M.D.**, received these kickbacks and bribes through Tru Essence.

32.     After acquiring Accuhealth, **LASHONDRIA SIMPSON-CAMP, M.D.**, changed, and caused others to change, Accuhealth's claimants' "Preferred Pharmacy" to TruCare, and referred prescriptions for high-reimbursing drugs, using pre-printed prescription pads, to TruCare and Advance in furtherance of the scheme.

33.     Between in or around March 2018, and May 2022, FECA paid TruCare and Advance at least $7 million for prescriptions **LASHONDRIA SIMPSON-CAMP, M.D.**, her nurse practitioner, and other Accuhealth prescribers referred to TruCare in exchange for kickbacks and bribes.

34.     Similarly, to induce Griselda Adams to refer, or cause to be referred, prescriptions for claimants to Advance and TruCare, **SHALONDRIA SIMPSON** and **SHAYLA BRYANT** paid, and caused to be paid, kickbacks and bribes to Griselda Adams, often through shell companies.

35.     Between in or around July 2016, and 2021, **SHALONDRIA SIMPSON** paid at least $2 million in kickbacks and bribes to Griselda Adams through shell companies, including Era Remodeling Corp and Taxx Corp, set up for Griselda Adams's benefit, in return for Griselda Adams's referral of prescriptions to Advance and TruCare, on behalf of claimants.

36.     Between in or around July 2016, and May 2022, FECA paid TruCare and Advance at least $27 million for prescriptions Wellistics prescribers referred to TruCare and Advance in exchange for kickbacks and bribes.

37.     Similarly, to induce Medical Assistant 1 to refer, or cause to be referred, prescriptions for claimants to Advance and TruCare, **SHALONDRIA SIMPSON** and **SHAYLA BRYANT** paid, and caused to be paid, kickbacks and bribes to Medical Assistant 1.

38.     Between in or around September 2016, and March 2022, **SHALONDRIA SIMPSON** paid these kickbacks and bribes to Medical Assistant 1, in part, by way of approximately $90,000 in cash **SHALONDRIA SIMPSON** withdrew by counter check from the Advance Operating Account, in exchange for Medical Assistant 1's referral of prescriptions to Advance and TruCare, on behalf of claimants.

39.     The prescriptions Medical Assistant 1 referred to Advance and TruCare were false and fraudulent as they were often not authorized by Physician 1, were medically unnecessary, and were induced by the payment and receipt of kickbacks and bribes.

40.     Between in or around September 2016, and March 2022, FECA paid TruCare and Advance at least $6 million for prescriptions purportedly signed by Physician 1 in furtherance of the scheme.

41.     To induce other prescribers, known and unknown to the Grand Jury, to send prescriptions for claimants to Advance and TruCare, **SHALONDRIA SIMPSON** paid, and

caused to be paid, kickbacks and bribes to other marketers, known and unknown to the Grand Jury, often in the form of cash she withdrew from the Advance Operating Account.

42.     Between in or around 2016, and 2021, **SHALONDRIA SIMPSON** withdrew at least $1 million in cash by counter check from the Advance Operating Account.

*Use of Accounts*

43.     FECA electronically deposited the proceeds of the scheme into Advance and TruCare's bank accounts.  Proceeds for Advance were deposited into the Advance Operating Account and the JP Morgan Chase ("JPMC") account held in the name of Advance Pharmacy ending in *5623.  Proceeds for TruCare were deposited into the TruCare Operating Account and the JPMC account held in the name of Eclectic Rx Consulting ending in *2252.

44.     **SHALONDRIA SIMPSON** conducted transactions, and directed others to conduct transactions, that involved the proceeds of the scheme and were designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds.

45.     Between in or around September 2016, and November 2016, **SHALONDRIA SIMPSON** issued checks involving proceeds of the scheme from the Advance Operating Account, made out to "Era Remodeling Corp," for a total of approximately $167,800, which represented kickbacks and bribes intended for Griselda Adams.  These checks, which often exceeded $10,000, were deposited into the Regions Bank account held in the name of Era Remodeling Corp ending in *4498 ("Era Remodeling Account").  The transactions from the Era Remodeling Account for Griselda Adams's benefit, conducted in the name of "Era Remodeling Corp," were designed to conceal or disguise the nature, source, ownership, and control of the proceeds.

46.     Between in or around October 2016, and August 2021, **SHALONDRIA SIMPSON** paid kickbacks and bribes in the form of checks involving proceeds of the scheme

from the Advance Operating Account, made out to "Taxx Corp," for a total of approximately $1.8 million, intended for Griselda Adams. These checks, which often exceeded $10,000, were deposited into the Bank of America account held in the name of Taxx Corp ending in *0986 ("Taxx Corp Account").

47. **SHALONDRIA SIMPSON** intended the checks made out "Era Remodeling Corp" or "Taxx Corp," to conceal and disguise the payment of kickbacks and bribes to Griselda Adams, and made the checks out to the shell companies rather than directly to Griselda Adams, to conceal and disguise the nature of the transactions. The transactions from the Taxx Corp Account for Griselda Adams's benefit, conducted in the name of "Taxx Corp," were designed to conceal or disguise the nature, source, ownership, and control of the proceeds.

48. Between in or around February 2016, and March 2021, **SHALONDRIA SIMPSON** withdrew cash and issued counter checks to cash totaling more than $1 million that involved proceeds from the Advance Operating Account and the TruCare Operating Account.

49. **SHALONDRIA SIMPSON** used the cash to pay kickbacks and bribes to Griselda Adams, Medical Assistant 1, and others, known and unknown to the Grand Jury. These counter check and cash withdrawals were designed to conceal and disguise the nature of the transactions. **SHALONDRIA SIMPSON**'s further use of cash transactions to pay marketers was designed to conceal and disguise the nature, source, ownership, and control of the proceeds.

50. After in or around May 2022, when **SHALONDRIA SIMPSON** learned that law enforcement was investigating her conduct and the conduct associated with Advance and TruCare, she took steps to further conceal proceeds, including by converting proceeds to cash, transferring proceeds between and among accounts she owned or controlled, and soliciting other's help in liquidating assets and concealing her ownership and control of those assets.

<u>COUNT 1</u>
**Conspiracy to Defraud the United States and Pay and Receive Health Care Kickbacks**
**(18 U.S.C. § 371)**

51.     Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

52.     Beginning in or around 2016, and continuing through in or around 2022, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**SHALONDRIA SIMPSON,**
**LASHONDRIA SIMPSON-CAMP, M.D., and**
**SHAYLA BRYANT,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, including Griselda Adams and Medical Assistant 1, to commit the following offenses against the United States, that is:

a.     to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the DOL-OWCP in its administration and oversight of FECA;

b.     to violate Title 42, United States Code, Section 1320a-7b(b)(2) by offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such person:  (i) to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, FECA; and (ii) to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA; and

c.     to violate Title 42, United States Code, Section 1320a-7b(b)(1) by soliciting and receiving any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, including by check and interstate wire transfer, in return for:  (i) referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, FECA; and (ii) purchasing, leasing, ordering, and arranging for and recommending purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA.

## Purpose of the Conspiracy

53.     It was a purpose of the conspiracy for **SHALONDRIA SIMPSON**, **LASHONDRIA SIMPSON-CAMP, M.D.**, **SHAYLA BRYANT**, and co-conspirators known and unknown to the Grand Jury to unlawfully enrich and benefit themselves through, among other things: (a) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for the referral of prescriptions for high-reimbursing drugs; (b) submitting and causing the submission of claims to DOL-OWCP for prescription drugs that were induced by kickbacks and bribes and medically unnecessary; (c) concealing and disguising the payment and receipt of kickbacks and bribes, and the submission of false and fraudulent claims; and (d) diverting the proceeds of the conspiracy for the personal use and benefit of the defendants and their coconspirators, and to further the fraud.

## Manner and Means of the Conspiracy

54.     The manner and means by which defendants and co-conspirators known and unknown to the Grand Jury sought to accomplish the objects and purpose of the conspiracy

included, among other things, the conduct described as the Operation of the Scheme in paragraphs 20 through 50, which are incorporated by reference as if fully set forth herein.

### Overt Acts

55.     In furtherance of the conspiracy, and to accomplish its objects and purpose, **SHALONDRIA SIMPSON**, **LASHONDRIA SIMPSON-CAMP, M.D.**, and **SHAYLA BRYANT** committed and caused to be committed in the Southern District of Texas, and elsewhere, the following overt acts, among others:

a.      On or about October 8, 2016, **SHALONDRIA SIMPSON** paid $83,000 to Griselda Adams by check from the Advance Operating Account, made out to "Taxx Corp."

b.      On or about March 8, 2018, **SHALONDRIA SIMPSON** paid $500,000 to **LASHONDRIA SIMPSON-CAMP, M.D.**, by check from the Advance Operating Account, made out to "Tru Essence Cosmetic + Medical Spa."

c.      On or about March 16, 2018, **SHALONDRIA SIMPSON** paid $1,150,000 to **LASHONDRIA SIMPSON-CAMP, M.D.**, by check from the Advance Operating Account, made out to "Tru Essence Cosmetic Spa."

d.      On or about June 1, 2018, **SHAYLA BRYANT** sent **SHALONDRIA SIMPSON** an email with the subject line "Confidential Payments." The email contained a spreadsheet titled "Payments.xlsx," which consisted of kickback calculations.

e.      On or about November 12, 2019, **LASHONDRIA SIMPSON-CAMP, M.D.**. sent an email to **SHALONDRIA SIMPSON** with the subject line "One other thing," including a message about prescription referrals from Accuhealth to TruCare and Advance, that stated: "I would like to see each month how much money is coming in on your end from the scripts we write. Let's face it, the amount may not be what you thought it was

going to be when you bought the clinic, but it's more than what you would have coming in otherwise."

       f.      On or about November 13, 2019, **SHALONDRIA SIMPSON** responded to **LASHONDRIA SIMPSON-CAMP, M.D.**, by email: "The agreement we made before I bought the clinic was that all prescriptions would be coming to my pharmacy.  Otherwise I would not have bought Accuheatlh [sic] for 2.5 million dollars."

       g.      On or about January 7, 2021, **SHALONDRIA SIMPSON** paid $213,332 to Griselda Adams by check from the Advance Operating Account, made out to "Taxx Corp."

       h.      On or about August 20, 2021, **SHALONDRIA SIMPSON** paid $33,477 to Griselda Adams by check from the Advance Operating Account, made out to "Taxx Corp." All in violation of Title 18, United States Code, Section 371.

<u>**COUNT 2**</u>
**Conspiracy to Commit Health Care Fraud**
**(18 U.S.C. § 1349)**

56.      Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

57.      Beginning in or around 2016, and continuing through in or around 2022, in the Houston Division of the Southern District of Texas, and elsewhere, defendants,

**SHALONDRIA SIMPSON,**
**LASHONDRIA SIMPSON-CAMP, M.D., and**
**SHAYLA BRYANT,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the Grand Jury, including Griselda Adams and Medical Assistant 1, to execute and attempt to execute a scheme and artifice to defraud a health care benefit program

affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, FECA, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

58.    It was a purpose of the conspiracy for **SHALONDRIA SIMPSON**, **LASHONDRIA SIMPSON-CAMP, M.D.**, **SHAYLA BRYANT**, and co-conspirators known and unknown to the Grand Jury to unlawfully enrich and benefit themselves through, among other things: (a) the submission to DOL-OWCP of false and fraudulent claims for prescription drugs that were prescribed and dispensed without regard to medical necessity, were not provided or not provided as billed, and/or were induced by kickbacks and bribes; (b) diverting the proceeds for their personal use and benefit and the benefit of others; and (c) furthering the fraud.

### Manner and Means of the Conspiracy

59.    The manner and means by which defendants and co-conspirators known and unknown to the Grand Jury sought to accomplish the purpose of the conspiracy included the conduct described as the Operation of the Scheme in paragraphs 20 through 50, which are incorporated by reference as if fully set forth herein.

All in violation of Title 18, United States Code, Section 1349.

### COUNTS 3 THROUGH 7
**Payment of Health Care Kickbacks**
**(42 U.S.C. § 1320a-7b(b)(2) & 18 U.S.C. § 2)**

60.    Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

15

61.     On or about the dates enumerated below, in the Houston Division of the Southern District of Texas, and elsewhere, defendant(s) enumerated below, aiding and abetting, and aided and abetted by, others known and unknown to the Grand Jury, did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to any person to induce such a person to refer an individual for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, FECA; and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item for which payment may be made in whole and in part under a Federal health care program, that is, FECA, as set forth below, each constituting a separate count in this Indictment:

| Count | Defendant(s) | Approx. Date | Amount | Description |
|-------|--------------|--------------|--------|-------------|
| 3 | **SHALONDRIA SIMPSON and SHAYLA BRYANT** | October 10, 2018 | $34,386.00 | Check 1915 from Advance Operating Account made out to Taxx Corp |
| 4 | **SHALONDRIA SIMPSON** | April 17, 2019 | $5,000.00 | Zelle Quickpay transfer from JPMC account ending in *2204, held in the name of "Shalondria Renee Simpson" ("Simpson *2204"), to "Gigi" |
| 5 | **SHALONDRIA SIMPSON** | December 8, 2020 | $107,254.67 | Check 2096 from Advance Operating Account made out to Taxx Corp |
| 6 | **SHALONDRIA SIMPSON** | January 7, 2021 | $213,332.00 | Check 2112 from Advance Operating Account made out to Taxx Corp |
| 7 | **SHALONDRIA SIMPSON** | August 20, 2021 | $33,477.49 | Check 2140 from Advance Operating Account made out to Taxx Corp |

Each in violation of Title 42, United States Code, Section 1320a-7b(b)(2), and Title 18, United States Code, Section 2.

## COUNT 8
## Conspiracy to Commit Money Laundering
## (18 U.S.C. § 1956(h))

62.     Paragraphs 1 through 19 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

63.     Beginning in or around 2016, and continuing through in or around 2022, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

**SHALONDRIA SIMPSON,**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, including Griselda Adams, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, as follows:

        a.      to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, offering, paying, soliciting, and receiving health care kickbacks, in violation of Title 42, United States Code, Section 1320a-7b(b); conspiracy to defraud the United States and pay and receive health care kickbacks, in violation of Title 18, United States Code, Section 371; health care fraud, in violation of Title 18, United States Code, Sections 1347 and 2; and conspiracy to commit health care fraud, in violation of Title 18, United States Code, Section 1349 ("Specified Unlawful Activity"), knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

        b.      to knowingly engage, attempt to engage, and cause and aid and abet others in engaging in, monetary transactions by, through, and to a financial institution, affecting

17

interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a "Specified Unlawful Activity," in violation of Title 18, United States Code, Section 1957.

## Purpose of the Conspiracy

64.     It was a part and object of the conspiracy that **SHALONDRIA SIMPSON**, Griselda Adams, and others known and unknown to the Grand Jury to conceal and disguise the health care fraud and kickback conspiracies and the proceeds of those schemes by laundering the proceeds into assets and engaging in monetary transactions with criminally derived property that was of a value greater than $10,000.

## Manner and Means

65.     The manner and means by which defendant and co-conspirators known and unknown to the Grand Jury sought to accomplish the purpose of the conspiracy included the conduct described as the Operation of the Scheme in paragraphs 20 through 50, which are incorporated by reference as if fully set forth herein.

66.     From in or around April 2017, through in or around October 2022, **SHALONDRIA SIMPSON** transferred proceeds between and among accounts she owned or controlled, including the Advance Operating Account; the TruCare Operating Account; the TruEssence  Account; Simpson *2204"; the JPMC account held in the name of Advance Pharmacy ending in *5623; the JPMC account held in the name of Eclectic Rx Consulting ending in *2252; the JPMC account held in the name of SRS Real Estate Investments LLC ending in *0729; the four JPMC accounts held in the name of Shalondria R Simpson Revocable Trust, ending in *5077 ("*5077 Trust"), *1962 ("*1962 Trust"), *4727, and *8226; the Charles Schwab brokerage account held in the name of Shalondria Simpson ending in *3195; and the Coinbase.com wallet with the identity Shalondria

Simpson ending in *1cf7.  These transactions were designed to conceal and disguise the nature and source of the proceeds.

67.     Between in or around 2016, and October 2022, **SHALONDRIA SIMPSON** used proceeds, often after transferring them as described in paragraph 66, to purchase real property, vehicles, trips, and other luxury items for herself and others, often in excess of $10,000.

All in violation of Title 18 United States Code, Section 1956(h).

## COUNTS 9 THROUGH 13
**Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (18 U.S.C. §§ 1957 and 2)**

68.     Paragraphs 1 to 50 of this Indictment are re-alleged and incorporated by reference as if fully set forth herein.

69.     On or about the dates enumerated below, in the Houston Division of the Southern District of Texas, and elsewhere, defendant,

**SHALONDRIA SIMPSON,**

aiding and abetting and aided and abetted by others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a Specified Unlawful Activity, as follows:

19

| Count | Payer Account | Transaction Date | Debit | Payee |
|:---:|:---:|:---:|:---:|:---:|
| **9** | Simpson *2204 | September 14, 2018 | $1,668,677.70 | Infinity Title |
| **10** | TruCare Operating Account | June 25, 2021 | $3,500,000.00 | *1962 Trust |
| **11** | Advance Operating Account | June 25, 2021 | $1,500,000.00 | *1962 Trust |
| **12** | *1962 Trust | November 2, 2021 | $2,061,622.83 | Patten Title |
| **13** | *5077 Trust | July 5, 2022 | $595,925.76 | Spark Title LLC |

Each in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. §§ 982(a)(1), 982(a)(7) and 981(a)(1)(C))

70.     Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to defendants **SHALONDRIA SIMPSON, LASHONDRIA SIMPSON-CAMP, M.D.**, and **SHAYLA BRYANT** that upon their conviction of any of Counts One through Seven of this Indictment, the United States intends to seek forfeiture of all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offenses.

71.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States of America gives notice to defendants **SHALONDRIA SIMPSON, LASHONDRIA SIMPSON-CAMP, M.D.**, and **SHAYLA BRYANT** that upon their conviction of any offenses charged in this Indictment, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

72.     Pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), the United States of America gives notice to defendant **SHALONDRIA SIMPSON** that upon conviction of any of Counts Eight through Thirteen, the United States intends to seek forfeiture of all property, real or personal, involved in such offense, and any property traceable to the commission of the offenses.

## Property Subject to Forfeiture

73.     Defendants are notified that the property subject to forfeiture includes, but is not limited to, the following:

    a.  At least $53,840,532.28 in criminal proceeds;

*Real Property:*
    b.  1219 Oahu Dr., Tiki Island, TX 77554;
    c.  13405 Sunset Bay Ln., Pearland, TX 77584;
    d.  2331 Nashville Ave., New Orleans, LA 70015;
    e.  4028 Chatham Ln., Houston, TX 77027
    f.  31 Riverstone Island Dr., Sugarland, TX 77479;
    g.  5213 Lilian St., Houston, TX 77007;

*Vehicles:*
    h.  2017 Blue Wave 2200 Pure Bay with Serial No. PWV13872F617;
    i.  2017 Jaguar with VIN SAJWA2GE1GMW0206;
    j.  2017 Land Rover with VIN SALGS2FK6HA369005;
    k.  2018 Tesla SUV with VIN 5YJXCBE25JF104983;
    l.  2021 Jeep Grand Cherokee with VIN 1C4RJFAG2MC753861;
    m.  2021 Mercedes G63 with VIN W1NYC7HJ4MX415540.

*Accounts:*

| Financial Institution | Account Name | *Number | Approximate Amount |
|---|---|---|---|
| BB&T | Advance Pharmacy LLC | **4717** | $386,110.38 |
| BB&T | Eclectic Rx Consulting Inc DBA: TruCare Pharmacy | **7427** | $806,821.00 |
| JPMC | Shalondria Renee Simpson | **2204** | $15,196.24 |
| JPMC | Advance Pharmacy LLC | **5623** | $398,337.31 |
| JPMC | Eclectic Rx Consulting | **2252** | $618,999.54 |
| JPMC | SRS Real Estate Investments LLC | **0729** | $22,026.23 |

| JPMC | Shalondria R Simpson Revocable Trust | *5077 | $231,827.75 |
| JPMC | Shalondria R Simpson Revocable Trust | *1962 | $1,697,013.49 |
| Charles Schwab | Shalondria Simpson | *3195 | $1,000,000.00 |

## Money Judgment and Substitute Assets

74.      Defendants are notified that the United States will seek the imposition of a money judgment against each defendant.  In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of a defendant in substitution up to the amount of the money judgment.

A TRUE BILL

**Original Signature on File**

FOREPERSON

ALAMDAR S HAMDANI
UNITED STATES ATTORNEY

GLENN S. LEON
CHIEF
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Devon Helfmeyer*

Devon Helfmeyer
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*Andrew Tamayo*

Andrew Tamayo
TRIAL ATTORNEY
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE