IN THE UNITED STATES COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | CRIMINAL NO. 4:23-CR-00415 |
| v. | § § | PUBLIC VERSION |
| SHALONDRIA SIMPSON, LASHONDRIA SIMPSON-CAMP, M.D., AN SHAYLA BRYANT | § § § § § | |
| Defendants. | § § § § | |

## SHALONDRIA R. SIMPSON'S POSITION ON CONDITIONS OF PRE-TRIAL RELEASE

Shalondria R. Simpson (Mrs. Simpson), by and through undersigned counsel, respectfully requests that this Court continue her pre-trial release on a personal recognizance bond and under a minor modification of the conditions of release entered by this Court on October 6, 2023.[1]

In this case, there is no dispute between the parties that Mrs. Simpson should not be detained pending further proceedings. Moreover, Mrs. Simpson does not object to complying with standard conditions of release, such as those previously imposed by the Court. But the Government's request in its proffer that Mrs. Simpson's release conditions include "a cash bond; [and] restrictions on Simpson's financial transactions"[2] is unreasonable and unnecessary to ensure her appearance at any future proceedings. Accordingly, the Government's request should be

---

[1] Mrs. Simpson does not object to the majority of conditions recommended by Pretrial Services, except the restriction on billing all Federal Health Care Programs. Such a restriction, if any, should be limited to billing to the U.S. Department of Labor, Office of Workers' Compensation under the Federal Workers Compensation Act, as only billings to that program is at issue in this case.

[2] Proffer in Support of Bond Conditions Request at 1.

rejected and the Court should continue her pre-trial release on a personal recognizance bond and under the standard conditions of release previously entered—with one minor modification.

Mrs. Simpson respectfully requests that condition 7(g) be modified to permit Mrs. Simpson to have non-case-related discussions with individuals who may be potential witnesses or victims in this case. Such a modification is necessary to ensure that Mrs. Simpson does not inadvertently violate the her conditions of release through an ordinary conversation in the course of her daily life.

Under the Bail Reform Act, Mrs. Simpson must be released under the "least restrictive" set of conditions or combination of conditions that will "reasonably assure her presence at trial," unless the Court determines that she is a flight risk or a danger to the community. 18 U.S.C. 3142(b), (c). Here, there is no credible argument to be made that Mrs. Simpson is either a flight risk or a danger to any other person.

She is longtime resident of Texas and a well-respected member of the Houston business community. Her family lives in and around the Houston, Texas area and she has no foreign ties. Indeed, Mrs. Simpson voluntarily surrendered her only active passport upon learning of the Indictment filed against her. What's more, the Government has never contended that she poses a danger to the community. There are no allegations in the Indictment that would support such a claim against her.

Accordingly, the Court should grant Mrs. Simpson continued pre-trial release on a personal recognizance bond and modify the standard conditions of release already entered by the Court as discussed above.

## BACKGROUND

On September 7, 2023, while Mrs. Simpson was out of the country, an indictment (the "Indictment") was filed against Mrs. Simpson and two alleged co-defendants, LaShondria Simpson-Camp and Shayla Bryant, alleging that she participated in a scheme to defraud the United States by submitting and causing the submission of supposedly false and fraudulent claims for prescription drugs to the U.S. Department of Labor under the Federal Employee's Compensation Act. (Dkt. No. 1). The Indictment was unsealed on September 25, 2023. (Dkt. No. 12).

On October 6, 2023, Mrs. Simpson appeared for an initial appearance and arraignment. (Minute Entry, Oct. 6, 2023). During the initial hearing, the Government conceded that Mrs. Simpson does not pose a flight risk. Moreover, the Government did not make any claim that she posed a threat to the community. Indeed, the Government agreed that Mrs. Simpson, along with both of her co-defendants, could be released on a personal recognizance bond pending a continued hearing the matter. Accordingly, the Court released Mrs. Simpson on a personal recognizance bond, subject to standard conditions of release and continued the hearing until October 13, 2023. (*Id.*)

## LEGAL STANDARD

The Bail Reform Act of 1984 is "structured in favor of release on personal recognizance bond." *United States v. Anderson*, No. 5:15-MJ-116, 2015 WL 13307592, at *2 (N.D. Tex. 2015); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). The purpose of bail "is to secure the presence of the defendant, not to enrich the government or punish the defendant." *United States v. Powell*, 639 F.2d 224, 225 (5th Cir. 1981); *United States v. Famiglietti*, 548 F. Supp. 2d 398, 407 (S.D. Tex. 2008) (emphasizing that a desire to punish either the defendant or

the surety plays no role in this policy arena, the purpose is to increase the likelihood, generally, that defendants and sureties will take their bond commitments seriously and that defendants will attend scheduled court appearances and not engage in criminal activity while they are on pretrial release); *United States v. Noyola*, No. SA-22-CR-00151-XR, 2022 WL 3368135, at *3 (W.D. Tex. Aug. 16, 2022) (citing *Dudley v. United States*, 242 F.2d 656 (5th Cir. 1957) (The purpose of a bail bond is not punitive. Its object is not to enrich the government or punish the defendant).

Under Section 3142, a defendant must be released on his personal recognizance or an unsecured bond "unless a judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Even if personal recognizance or a bond is found to be insufficient, the court "shall order the pretrial release" of a defendant subject to the "least restrictive" set of conditions or combination of conditions that "will reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(c)(1)(B).

Importantly, a judicial officer *may not impose a financial condition that results in the pretrial detention of the person*." 18 U.S.C. § 3142(c)(2) (emphasis added). Conditions of release, including a bail amount, that are not related to ensuring the defendant's appearance at trial are inappropriate and likely violate the Excessive Bail Clause of the Eighth Amendment. U.S. Const. amend. VIII; *Stack v. Boyle*, 342 U.S. 1, 5 (1951); *see also United States v. Rose*, 791 F.2d 1477, 1480 (11th Cir. 1986) (condition in appearance bond requiring defendant to pay all fines levied if conviction affirmed violated the 8th Amendment excessive bail prohibition because condition not related to ensuring defendant's appearance at trial).

In this case, the Court should allow Mrs. Simpson to remain on pre-trial release on a personal recognizance bond and subject to the standard conditions of release already imposed.

Such conditions are adequate to ensure Ms. Simpson's appearance at any future proceedings in this matter because Mrs. Simpson is neither a flight risk or a danger to any person or the community.

I. **Mrs. Simpson's pretrial release will pose no flight risk.**

In the hearing on October 6, 2023, the Government stated on the record that Mrs. Simpson poses no flight risk. As noted, Mrs. Simpson is a native-born United States citizen with no foreign ties, and her only active passport has already been surrendered.

Moreover, she has demonstrated her willingness to face the false allegations marshalled against her and clear her name. Before surrendering her passport to Pretrial Services, Mrs. Simpson had already left the country twice in the last six (6) months and returned to her home each time even though she has been aware of the ongoing Government investigation since it executed search warrants at her pharmacies in May 2022. In addition, she voluntarily appeared in Court on October 6, 2023 in response to her Summons. It is also worth noting that Mrs. Simpson is over eight (8) months pregnant and is set to be induced on October 27, 2023. Her doctor has provided a written note stating that Mrs. Simpson will have weekly doctor's appointments prior to her induction.[3] Once her son is born, Mrs. Simpson will be focused on caring for her newborn and recovering from her high-risk pregnancy.

The Government cannot credibly argue that Mrs. Simpson has a greater incentive to flee now that the Indictment has been filed against her. Mrs. Simpson has been aware of the Government's investigation and the potential consequences of that investigation since at least May 2022 when the Government executed two (2) premises search warrants and a third electronic search warrant on her phone (which she voluntarily surrendered. The Government then executed

---

[3] *See* Exhibit 1 (filed under seal).

additional seizure warrants in September 2023, seizing multiple financial accounts and properties. Her attorneys have attended several proffers by the Government at which the Government presented its view of the case against Mrs. Simpson and outlined potential charges that might be brought and the maximum punishment that Mrs. Simpson may face if convicted. Finally, the Government has repeatedly represented to Mrs. Simpson's counsel and to the Court since at least May 2023 that the Indictment was imminent: ██████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████ Yet Mrs. Simpson has repeatedly engaged with the Government's investigation through counsel and has taken no action to flee or otherwise avoid facing the Government's charges. In sum, it would be unreasonable to conclude that Mrs. Simpson—having been aware of the potential charges and punishment she may face for over a year—now somehow poses a greater risk of flight. Therefore, Mrs. Simpson's release on a personal recognizance bond poses no flight risk.

**II.     Mrs. Simpson's pretrial release will pose no danger to any person or the community.**

There is no basis for the Court to conclude that Mrs. Simpson poses a danger to any person or to the community. She is not charged with any act of violence or other conduct that would evidence a danger to the community. The charges in the Indictment solely related to billings by Mrs. Simpson's pharmacies to the U.S. Department of Labor Workmen's Compensation Program, which she voluntarily ceased billing in 2022, so there is no potential danger to a federal program. Nor is there any other evidence exists to indicate that Mrs. Simpson is dangerous. Indeed, the Government's agreement to release Mrs. Simpson on a personal recognizance bond for the last week is further evidence that even the Government does not believe Mrs. Simpson is a danger to

6

her community. Therefore, Mrs. Simpson's release on a personal recognizance bond poses no danger to any person or the community.

**III.     Mrs. Simpson's History and Characteristics Weigh in Favor of Pretrial Release on a Personal Recognizance Bond.**

Section 3142(g) sets forth four factors that courts should consider when evaluating a request for pretrial release. (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) the history and characteristics of the person," including among other factors, the defendant's character, physical and mental condition, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). These factors all weigh in favor of releasing Mrs. Simpson on a personal recognizance bond.

(1) *Nature and Circumstances of the Offense Charged*. Although the offenses charged are undeniably serious, Mrs. Simpson has not been charged with "a crime of violence, a violation of section 1591, [or] a Federal crime of terrorism." 18 U.S.C. § 3142(g)(1). Nor does this case "involve[ ] a minor victim or a controlled substance, firearm, explosive, or destructive device." *Id.* In the absence of any evidence that Mrs. Simpson will not comply with the standard conditions of release, the nature and circumstances of the offense thus militate toward release on a personal recognizance bond. *Salerno*, 481 U.S. at 747 (noting the Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes").

(2) *Weight of the Evidence*. The Government has yet to present any evidence supporting the Indictment and Mrs. Simpson strenuously denies any wrongdoing and contends that there is no evidence to support the charges against her. And the Government has yet to present any evidence to support its charges. In any event, courts have recognized that the weight of the

7

evidence is the least important of the § 3142(g) factors. *See, e.g.*, *United States v. Stanford*, 630 F. Supp. 2d 751, 755 (S.D. Tex. 2009).

(3) *History and Characteristics of Mrs. Simpson*. Mrs. Simpson's character supports her request for release on a personal recognizance bond. Mrs. Simpson has extensive ties to this community. She has maintained a residence here for over 20 years and has raised her family here. Indeed, she is about to give birth to her new son here.

Moreover, Mrs. Simpson has only a minor criminal history and has no record of prior failures to appear for court. Accordingly, there is no basis to believe that Mrs. Simpson would abuse her pretrial release now.

(4) *The Nature and Seriousness of Any Danger Posed by Release*. As noted above, there has never been any suggestion that Mrs. Simpson poses a threat to the community.

And to the extent that the Government raises concerns about witness intimidation or evidence tampering, such concerns are mere speculation. The Government has not produced any evidence suggesting that Mrs. Simpson is likely to attempt to intimidate or even contact potential witnesses in this case. And as to the fear of evidence tampering, the only example the Government identifies in its proffer is a text message to Mrs. Simpson's real estate agent on September 15, 2022, stating that Mrs. Simpson needs to transfer the ownership of the house to her mother.[4] But, as the Government has previously readily conceded, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ It is nonsensical for the Government

---

[4] Proffer at 4.

to claim concern over a person's conduct when the only basis for that concern is action that never took place.

In sum, each of the Section 3142(g) factors reaffirms that Mrs. Simpson is neither a flight risk nor a danger to the community. In these circumstances, the Bail Reform Act compels Mrs. Simpson's continued pre-trial release on a personal recognizance bond and subject to the standard conditions already imposed by the Court.

**IV.     The Government's Request for a Cash Bond and Additional Conditions of Release are Unreasonable.**

Mrs. Simpson understands that the Government intends to request additional conditions of release, including a $500,000 cash bond and a prohibition on Mrs. Simpson or any entities that she owns, manages, or for which she serves as an officer, engaging in any financial transaction greater than $5,000 without notifying the Court and getting permission from Pretrial Services. The Court should reject these conditions as unreasonable and unnecessary.

*First*, for the reasons explained above, a cash bond—particularly as significant a bond as the Government apparently intends to seek—is unnecessary to ensure Mrs. Simpson's appearance at trial. For purposes of pre-trial release, the standard for ensuring appearance at trial is one of "reasonable likelihood" not a guarantee. *See United States v. Cheng*, No. 4:20-cr-455, 2021 WL 3516241, at *1 (S.D. Tex. Aug. 10, 2021) (The law favors non-detention and the standard to be applied is not a "guarantee" of appearance at trial, but "reasonable assurance" of appearance."). Because Mrs. Simpson has cooperated with the Government and appeared for proceedings throughout the course of the Government's investigation and dutifully complied with the Government's requests and the Court's orders since the Indictment was filed and unsealed—all without the need for a cash bond—she has already provided reasonable assurance that she will continue to abide by the conditions of release and appear for any future proceedings.

9

In any event, the amount sought by the Government is unreasonable. Even assuming that, contrary to its representations to this Court that Mrs. Simpson is *not* a flight risk, the Government's reason for seeking a cash bond is to prevent flight, there is no reason that the bond needs to be half a million dollars. *See Salerno*, 481 U.S. at 754 ("[W]hen the Government has admitted that its only interest is in preventing flight, bail must be set by a court at a sum designed to ensure that goal and no more."). Courts have regularly rejected bonds in the hundreds of thousands of dollars where there is no evidence that the defendant is likely to flee. *See, e.g.*, *Wagenmann v. Adams*, 829 F.2d 196, 213 (1st Cir. 1987) ($500 bail for paperwork infractions of Massachusetts statute excessive because arrestee posed no flight risk); *United States v. Beaman*, 631 F.2d 85, 86-87 (6th Cir. 1980) (bond of $400,000 excessive because not necessary to ensure defendant's appearance at trial); *United States v. Leisure*, 710 F.2d 422, 425-26 (8th Cir. 1983) (bail over $1,000,000 excessive in light of facts that defendants had lived in the area for many years, had family in the area, had real property and employment in the area, and had no record of prior failure to appear in court). Just as those courts did, this Court should reject the Government's request for a cash bond in its entirety.

*Second*, the Government's proposed restriction on Mrs. Simpson's ability to engage in financial transactions is unreasonable and unduly burdensome on both Mrs. Simpson *and* Pretrial Services (as well as the Court). As the Government admits, Mrs. Simpson owns and operates several businesses in the area. She has employees and bills to pay, as well as other obligations that she must satisfy. She cannot always predict what transactions might be necessary, and the process of having to seek Pretrial Services approval for each and every such transaction as well as notifying the Court will simply result in an unnecessary burden for all parties.

To the extent the Government argues that the restriction is necessary to prevent Mrs. Simpson from transferring assets, such a concern is premature. The Government's remedy to

secure assets in which it might have an interest is seizure and forfeiture—a remedy that the Government has acknowledged that it has already exercised through its September 2022 seizures and its June 2023 filing of a civil forfeiture action. *See United States v. Nine Fin. Accounts, Six Real Props., and Six Vehicles*, No. 4:23-cv-2350 (S.D. Tex.). Thus, any movement of assets could only go to a collectability of a judgment, which the Government does not yet have.

\* \* \*

In short, the Government has not articulated any legitimate bases to impose a cash bond requirement or additional conditions on Mrs. Simpson's release. Accordingly, the Court should reject the Government's requests.

**V.    The Court Should Modify the Conditions of Release to Permit Mrs. Simpson to Discuss Non-Case-Related Matters with Individuals Who May Be Potential Witnesses or Victims.**

Mrs. Simpson does not object to the Court imposing the same conditions of release entered on October 6, 2023, or to Pretrial Services recommendation prohibiting her from billing the Department of Labor. She does, however, respectfully request one minor modification to those conditions. Namely, condition 7(g) should be amended to permit Mrs. Simpson to have non-case-related discussions with individuals who may be potential witnesses or victims.

Under the Court's Order Setting Conditions of Release, Mrs. Simpson must "avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution." Dkt. No. 28 at 2. She also may not discuss any case-related information with her co-defendant, LaShondria Simpson-Camp. *Id.*

As imposed, condition 7(g) places an undue and unnecessary burden on Mrs. Simpson. Indeed, as drafted, the condition invites Mrs. Simpson to violate it inadvertently simply through the normal and legitimate operations of her pharmacy. For example, the employees of her pharmacy likely will be witnesses in the case, but it is untenable to expect Mrs. Simpson to operate

11

her business without engaging in any discussions with her employees. Similarly, the Government will undoubtedly claim that the patients for whom Mrs. Simpson's pharmacies provided prescriptions are victims in this case. Yet, Mrs. Simpson cannot reasonably be expected to avoid contact with anyone who contacts her pharmacy out of fear that she will be in violation of the Court's order.

In an effort to avoid this issue and comply with the condition as drafted, Mrs. Simpson requested that the Government provide her with a list of potential witnesses and victims. The Government responded that no such list presently exists. Accordingly, Mrs. Simpson is left in a catch-22: either shut down her business and avoid contact with anyone who the Government may consider to be a witness or victim in its investigation, or continue with her work and unknowingly violate the Court's order through an ordinary course interaction.

The Court should chart a middle ground and modify condition 7(g) to permit Mrs. Simpson to have non-case-related discussions with individuals who may be potential witnesses or victims.

## **CONCLUSION**

For these reasons, the grant Mrs. Simpson pretrial release on a personal recognizance bond under the conditions previously imposed with the exception of the restriction on having non-case-related contact with potential victims or witnesses, which should not be reimposed. Dkt. No. 28.

Date: October 11, 2023	Respectfully submitted,

*/s/ Ryan J. Meyer*
KATTEN MUCHIN ROSENMAN LLP
Ryan J. Meyer (Texas Bar No. 24088053)
2121 North Pearl Street, Suite 1100
Dallas, Texas 75201
Tel: (214) 765-3600
Fax: (214) 765-3602
Ryan.meyer@katten.com

Johnjerica Hodge (Texas Bar. No. 24087729)
1919 Pennsylvania NW, Suite 800
Washington, DC 20006-3404
Tel: (202) 625-3710
Johnjerica.Hodge@katten.com

*Counsel for Shalondria R. Simpson*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2023, I caused the foregoing to be filed with the Clerk of the U.S. District Court for the Southern District of Texas. I also served a true and correct copy upon counsel for the United States via email.

*/s/ Ryan J. Meyer*
Ryan J. Meyer