United States District Court
Southern District of Texas

**ENTERED**

March 26, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-23-415-01 |
| | § | |
| SHALONDRIA R. SIMPSON, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

A grand jury charged Shalondria R. Simpson ("Defendant") in a thirteen-count Indictment.[1]  Pending before the court is Shalondria R. Simpson's Motion to Dismiss Counts 1 Through 8 of the Indictment ("Defendant's Motion to Dismiss") (Docket Entry No. 51). For the reasons stated below, Defendant's Motion to Dismiss will be denied.

## I.  **Background**

On September 7, 2023, a grand jury in the Southern District of Texas returned a thirteen-count Indictment.[2]  The Indictment charges Defendant with Conspiracy to Defraud the United States and

---

[1]Indictment, Docket Entry No. 1, pp. 1, 11, 14-17, 19.  For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.  The court refers to the Unites States of America as "the Government."

[2]Id.

Pay and Receive Health Care Kickbacks (Count 1), Conspiracy to Commit Health Care Fraud (Count 2), Payment of Health Care Kickbacks (Counts 3 through 7), Conspiracy to Commit Money Laundering (Count 8), and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (Counts 9 through 13).[3]

The Indictment alleges that Defendant owned Texas pharmacies Advance Pharmacy, LLC ("Advance") and Eclectic Rx Consulting Inc. d/b/a TruCare Pharmacy ("TruCare").[4] The Federal Employees Compensation Act ("FECA") pays workers' compensation benefits — including medical care and prescription drugs — to federal employees who suffer injury, disease, or death on the job.[5] Advance and TruCare were enrolled as health care providers with the Department of Labor Office of Worker's Compensation ("DOL-OWCP"), which administers FECA.[6]

## A.   Count 1

Count 1 alleges that Defendant and codefendants Shayla Bryant and Lashondria Simpson-Camp, M.D., violated 18 U.S.C. § 371 by conspiring "to defraud the United States by impairing . . . through

---

[3] Id.

[4] Id. at 1 ¶¶ 1-2, p. 2 ¶ 6.

[5] Id. at 3 ¶¶ 12, 14.

[6] Id. at 5 ¶ 21.

-2-

deceitful and dishonest means, the lawful government functions of the DOL-OWCP in its administration and oversight of FECA[.]"[7] Count 1 further alleges that the defendants conspired to violate 42 U.S.C. § 1320a-7b(b)(2) by offering and paying kickbacks in exchange for referring persons for items or services payable by FECA.[8] Count 1 describes the "Purpose of the Conspiracy" as:

> unlawfully enrich[ing] and benefit[ing] [the defendants] through . . . (a) offering, paying, soliciting, and receiving kickbacks and bribes in exchange for the referral of prescriptions for high-reimbursing drugs; (b) submitting . . . claims to DOL-OWCP for prescription drugs that were induced by kickbacks and bribes and medically unnecessary; (c) concealing and disguising the payment and receipt of kickbacks and bribes, and the submission of false and fraudulent claims; and (d) diverting the proceeds of the conspiracy for [their] personal use . . . and to further the fraud.[9]

Count 1 alleges the "Manner and Means of the Conspiracy" by incorporating paragraphs 20-50 of the Indictment,[10] which allege in relevant part:

> 22. [Defendant and Bryant] used false and fraudulent means to maximize prescription-drug reimbursements from FECA. [Defendant and Bryant] . . . identified high-reimbursing drugs by submitting "test claims" to DOL-OWCP to determine reimbursements for a given drug.

---

[7]Id. at 11 ¶ 52. The Indictment alleges that Shayla Bryant was a pharmacist and Pharmacy Business Manager at Advance and TruCare. Id. at 2 ¶ 8. The Indictment alleges that Lashondria Simpson-Camp, M.D., was a physician licensed in Texas. Id. ¶ 7.

[8]Count 1 further alleges that the defendants conspired to receive kickbacks in exchange for referrals. Id. at 12 ¶ 52(c).

[9]Id. ¶ 53.

[10]Id. at 12-13 ¶ 54.

-3-

23.  "Test claims" were false and fictitious claims that did not reflect an actual prescription . . . but rather were claims submitted for learning the reimbursements rates from FECA for certain drugs.  After learning the reimbursement rate, [Defendant and Bryant] . . . used the reimbursement rate information to identify high-reimbursement drugs to fraudulently bill to FECA.

24.  [Defendant and Bryant] . . . formulated high-reimbursing drugs, and created . . . pre-printed prescription pads listing these high-reimbursing drugs. These prescriptions . . . contained ingredients . . . selected based on the DOL-OWCP reimbursement—ascertained through "test claims"—not claimants' medical needs . . .

25.  [Defendant and Bryant] . . . sent these pre-printed prescription pads, listing high-reimbursing drugs, to [prescribers] for them to issue prescriptions to claimants, often regardless of the claimants' medical need.

26.  [Defendant and Bryant] instructed [prescribers] . . . which drugs to prescribe to claimants.

27.  [Defendant and Bryant] . . . submitted claims to DOL-OWCP for prescriptions that were not dispensed or that were not dispensed as billed.

28.  Between in or around January 2016, and May 2022, Advance and TruCare billed FECA approximately $170 million for prescription drugs. FECA paid Advance and TruCare approximately $53 million on those claims.[11]

The Indictment alleges that Defendant paid kickbacks to induce prescribers to refer prescriptions to Advance and TruCare:

29.  As part of the scheme, [Defendant and Bryant] offered and paid [prescribers] in exchange for the referral of prescriptions, billable to FECA, to Advance and TruCare.

30.  To induce [Simpson-Camp] to refer prescriptions . . . to Advance and TruCare, [Defendant] . . . paid, $1.65 million in kickbacks and bribes to [Simpson-Camp], so that [Simpson-Camp] could purchase [a medical clinic, Accuhealth Injury & Wellness ("Accuhealth")] with the

---

[11] Id. at 5-6 ¶¶ 22-28.

> understanding that, in exchange for these kickbacks and
> bribes, [Simpson-Camp] would refer prescriptions payable
> by FECA to Advance and TruCare.
>
>                                  . . .
>
> 32.   After acquiring Accuhealth, [Simpson-Camp] changed,
> and caused others to change, Accuhealth's claimants'
> "Preferred      Pharmacy"    to     TruCare,    and     referred
> prescriptions    for     high-reimbursing    drugs,     using
> pre-printed prescription pads, to TruCare and Advance in
> furtherance of the scheme.[12]

The Indictment describes how Defendant allegedly paid kickbacks to

two other specific prescribers, Griselda Adams and an unnamed

"Medical Assistant 1."[13]   With respect to Adams, the Indictment

alleges:

> 34. Similarly, to induce Griselda Adams to refer . . .
> prescriptions for claimants to Advance and TruCare,
> [Defendant and Bryant] paid . . . kickbacks and bribes to
> Griselda Adams, often through shell companies.
>
> 35. Between in or around July 2016, and 2021, [Defendant]
> paid at least $2 million in kickbacks and bribes to
> Griselda Adams through shell companies, including Era
> Remodeling Corp and Taxx Corp, set up for Griselda
> Adams's benefit, in return for Griselda Adams's referral
> of prescriptions to Advance and TruCare . . .[14]

The Indictment further alleges:

> 41.   To induce other prescribers, known and unknown to
> the Grand Jury, to send prescriptions for claimants to
> Advance and TruCare, [Defendant] paid . . . kickbacks and
> bribes to other marketers, known and unknown to the Grand
> Jury, often in the form of cash she withdrew from the
> Advance Operating Account.[15]

_____

[12]Id. at 6-7 ¶¶ 29-32.

[13]Id. at 7 ¶ 34, p. 8 ¶¶ 35-40.

[14]Id. at 7-8 ¶¶ 34-35.

[15]Id. at 8-9 ¶ 41.

The Indictment alleges that Defendant engaged in transactions designed to disguise the scheme's proceeds:

> 45.   Between in or around September 2016, and November 2016, [Defendant] issued checks involving proceeds of the scheme from the Advance Operating Account, made out to "Era Remodeling Corp," for a total of approximately $167,800, which represented kickbacks and bribes intended for Griselda Adams . . .
>
> 46.   Between in or around October 2016, and August 2021, [Defendant] paid kickbacks and bribes in the form of checks involving proceeds of the scheme from the Advance Operating Account, made out to "Taxx Corp," for a total of approximately $1.8 million, intended for Griselda Adams . . .
>
> 47.   [Defendant] . . . made the checks out to the shell companies rather than directly to Griselda Adams, to conceal and disguise the nature of the transactions.
>
> 48.   Between in or around February 2016, and March 2021, [Defendant] withdrew cash and issued counter checks to cash totaling more than $1 million that involved proceeds from the Advance Operating Account and the TruCare Operating Account.
>
> 49.   [Defendant] used the cash to pay kickbacks and bribes to Griselda Adams, Medical Assistant 1, and others, known and unknown to the Grand Jury.   These counter check and cash withdrawals were designed to conceal and disguise the nature of the transactions. . . .
>
> 50.   After in or around May 2022, when [Defendant] learned that law enforcement was investigating her conduct . . . she took steps to further conceal proceeds, including by converting proceeds to cash, transferring proceeds between and among accounts she owned or controlled, and soliciting other's help in liquidating assets and concealing her ownership and control of those assets.[16]

Count 1 alleges that the defendants committed the following overt acts in furtherance of the conspiracy:

---

[16]Id. at 9-10 ¶¶ 45-50.

a.  On or about October 8, 2016, [Defendant] paid $83,000
to Griselda Adams by check from the Advance Operating
Account, made out to "Taxx Corp."

b.  On or about March 8, 2018, [Defendant] paid $500,000
to [Simpson-Camp] by check from the Advance Operating
Account, made out to "Tru Essence Cosmetic + Medical Spa."

c. On or about March 16, 2018, [Defendant] paid $1,150,000
to [Simpson-Camp] by check from the Advance Operating
Account, made out to "Tru Essence Cosmetic Spa."

d.  On or about June 1, 2018, [Bryant] sent [Defendant]
an email with the subject line "Confidential Payments."
The email contained a spreadsheet titled "Payments.xlsx,"
which consisted of kickback calculations.

e.  On or about November 12, 2019, [Simpson-Camp] sent an
email to [Defendant] with the subject line "One other
thing," including a message about prescription referrals
from Accuhealth to TruCare and Advance, that stated:  "I
would like to see each month how much money is coming in
on your end from the scripts we write.  Let's face it,
the amount may not be what you thought it was going to be
when you bought the clinic, but it's more than what you
would have coming in otherwise."

f.  On or about November 13, 2019, [Defendant] responded
to [Simpson-Camp] by email:  "The agreement we made
before I bought the clinic was that all prescriptions
would be coming to my pharmacy.  Otherwise I would not
have bought Accuheatlh [sic] for 2.5 million dollars."

g.  On or about January 7, 2021, [Defendant] paid
$213,332 to Griselda Adams by check from the Advance
Operating Account, made out to "Taxx Corp."

h.  On or about August 20, 2021, [Defendant] paid $33,477
to Griselda Adams by check from the Advance Operating
Account, made out to "Taxx Corp. . . ."[17]

B.  **Count 2**

Count 2 alleges that the defendants:

knowingly and willfully [conspired] to . . . defraud a
health care benefit program . . . that is, FECA, and to

---

[17]Id. at 13-14 ¶ 55(a)-(h).

obtain, by means of materially false and fraudulent [representations] money and property [from] said health care benefit program, in connection with the delivery of and payment for health care . . . in violation of [18 U.S.C. § 1347].[18]

Count 2 alleges the "Purpose of the Conspiracy" as:

enrich[ing] and benefit[ing] [the defendants] through, among other things:  (a) the submission to DOL-OWCP of false and fraudulent claims for prescription drugs that were prescribed and dispensed without regard to medical necessity, were not provided or not provided as billed, and/or were induced by kickbacks and bribes; (b) diverting the proceeds for their personal use and benefit and the benefit of others; and (c) furthering the fraud.[19]

Count 2 alleges the "Manner and Means of the Conspiracy" by incorporating paragraphs 20-50 of the Indictment, excerpted above.[20]

## C.  Counts 3 Through 7

Counts 3 through 7 allege that Defendant "did knowingly and willfully offer and pay remuneration, that is, kickbacks and bribes . . . to any person to induce such a person to refer an individual" for items or services payable by FECA "and to purchase, lease, order, and arrange for and recommend purchasing, leasing, and ordering any good, facility, service, and item" payable by FECA.[21] The Indictment alleges a particular payment for each count:[22]

---

[18]Id. at 14-15 ¶ 57.

[19]Id. at 15 ¶ 58.

[20]Id. ¶ 59.

[21]Id. at 16 ¶ 61.

[22]Id.

| Count | Defendant(s) | Approx. Date | Amount | Description |
|-------|-------------|--------------|--------|-------------|
| 3 | SHALONDRIA SIMPSON and SHAYLA BRYANT | October 10, 2018 | $34,386.00 | Check 1915 from Advance Operating Account made out to Taxx Corp |
| 4 | SHALONDRIA SIMPSON | April 17, 2019 | $5,000.00 | Zelle Quickpay transfer from JPMC account ending in *2204, held in the name of "Shalondria Renee Simpson" ("Simpson *2204"), to "Gigi" |
| 5 | SHALONDRIA SIMPSON | December 8, 2020 | $107,254.67 | Check 2096 from Advance Operating Account made out to Taxx Corp |
| 6 | SHALONDRIA SIMPSON | January 7, 2021 | $213,332.00 | Check 2112 from Advance Operating Account made out to Taxx Corp |
| 7 | SHALONDRIA SIMPSON | August 20, 2021 | $33,477.49 | Check 2140 from Advance Operating Account made out to Taxx Corp |

## D.    Count 8

Count 8 alleges that Defendant conspired with others including Adams "to knowingly conduct . . . transactions . . . involv[ing] the proceeds of specified unlawful activity . . . knowing that the transaction was designed in whole and in part to conceal and disguise . . . the proceeds of said Specified Unlawful Activity, in violation of [18 U.S.C. § 1956(a)(1)(B)(i).]"[23]   Count 8 further alleges that Defendant conspired "to knowingly engage . . . in, monetary transactions by, through, and to a financial institution . . . in criminally derived property of a value greater than

---

[23] Id. at 17 ¶ 63(a).  The specified unlawful activity referenced by Count Eight is paying health care kickbacks, conspiracy to defraud the United States and pay and receive health care kickbacks, health care fraud, and conspiracy to commit health care fraud.  Id.

$10,000, such property having been derived from a 'Specified Unlawful Activity,' in violation of [18 U.S.C. § 1957]."[24]

Count 8 alleges the "Manner and Means" of the Conspiracy by incorporating paragraphs 20-50, excerpted above, and by alleging:

> 66.  From in or around April 2017, through in or around October 2022, [Defendant] transferred proceeds between and among accounts she owned or controlled, including [specified accounts].  These transactions were designed to conceal and disguise the nature and source of the proceeds.

> 67.  Between in or around 2016, and October 2022, [Defendant] used proceeds, often after transferring them as described in paragraph 66, to purchase real property, vehicles, trips, and other luxury items for herself and others, often in excess of $10,000.[25]

## E.   Defendant's Motion to Dismiss

Defendant filed the pending Motion to Dismiss on January 29, 2024.[26]  Defendant asks the court to dismiss Counts 1 through 8.[27] Defendant argues that Counts 1 and 2 do not provide sufficient information for her to prepare her defense, do not sufficiently allege the intent elements of the offenses, and lack details necessary for her to raise a Double Jeopardy defense in future prosecutions.[28]  Defendant argues that Counts 3 through 7 do not

---

[24]Id. at 17-18 ¶ 63(b).

[25]Id. at 18-19 ¶¶ 65-67.

[26]Defendant's Motion to Dismiss, Docket Entry No. 51.

[27]Id. at 7.

[28]Id. at 15, 19, 22.

sufficiently allege that she acted with the requisite intent.[29]
Defendant argues that Count 8 impermissibly "merges" with Counts 3
through 7 by punishing her for some of the same transactions.[30]  In
the alternative, Defendant asks the court to order the Government
to provide a bill of particulars.[31]

The Government responded on February 23, 2024.[32]   The
Government argues that the Indictment is sufficient for Defendant
to prepare her defense, that it adequately alleges intent, that it
is sufficient for Double Jeopardy purposes, and that Count 8 does
not merge with Counts 3 through 7.[33]  The Government argues that the
court need not order a bill of particulars.[34]

Defendant replied on March 1, 2024, reurging her arguments
made in the Motion to Dismiss.[35]

## II.  **Legal Standard**

Federal Rule of Criminal Procedure 7(c)(1) states that an
indictment "must be a plain, concise, and definite written

---

[29]Id. at 23-24.

[30]Id. at 24.

[31]Id. at 25-28.

[32]United States' Response in Opposition to Defendant Simpson's
Motion to Dismiss Counts 1 Through 8 of the Indictment
("Government's Response"), Docket Entry No. 54.

[33]Id. at 13, 15, 17-20.

[34]Id. at 23.

[35]Shalondria R. Simpson's Reply in Support of Motion to Dismiss
Counts 1 Through 8 of the Indictment ("Defendant's Reply"), Docket
Entry No. 55, pp. 2-3.

statement of the essential facts constituting the offense charged." Moreover, the Sixth Amendment secures the right of a criminal defendant "to be informed of the nature and cause of the accusation" against her. U.S. Const., amend. VI.[36] "'An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense.'" United States v. Rafoi, 60 F.4th 982, 993 (5th Cir. 2023) (quoting United States v. Fairley, 880 F.3d 198, 206 (5th Cir. 2018)).

"'An indictment is intended to provide notice to the defendant that allows her to intelligently consider her defense or plea.'" United States v. Grant, 850 F.3d 209, 214 (5th Cir 2017) (internal brackets omitted). "An indictment need not list every particular of the offense." United States v. Richard, 775 F 3d 287, 292 (5th Cir. 2014) (rejecting argument that a bribery indictment was required to specify "which transaction was the subject of the bribe, and the name of the particular person from whom [the defendant] allegedly accepted a bribe"). United States v. Richard, 775 F.3d 287, 292 (5th Cir. 2014).

---

[36]The sufficiency of an indictment is also governed by the Fifth Amendment right to indictment by grand jury, which must find probable cause that the defendant committed each element of the charged offense. See United States v. Davis, 53 F.4th 833, 845 (5th Cir. 2022)

## III.   <u>Analysis</u>

### A.   Counts 1 and 2

Defendant argues that Counts One and Two should be dismissed because they lack details necessary for her to prepare her defense, because they do not sufficiently allege that she acted with the requisite intent, and because they lack details necessary for her to raise a Double Jeopardy defense in future prosecutions.

### 1.   <u>Defendant's Ability to Prepare Her Defense</u>

Defendant argues that Counts 1 and 2 lack details necessary for her to prepare her defense.  With respect to Count 1, Defendant argues that "[a]lthough the Government alleges that [Defendant] made payments to [Simpson-]Camp, Griselda Adams, and 'Medical Assistant 1,' it provides little detail about those payments other than the total amount of alleged payments made and payments received from FECA over a multi-year period."[37]  Defendant further challenges the Indictment's allegation in paragraph 41 that she "induced 'other prescribers' to send prescriptions to Advance and TruCare by making payments to 'other marketers[.]'"  Defendant argues that the Indictment fails to specify "the identity of the 'other prescribers' or 'other marketers;' [] the amount of any specific payments to such 'other marketers;' [] the specific location or exact date of the payments; [] the method of payment; or [] the number, if any, of prescriptions sent to Advance or

---

[37]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 16.

TruCare as a result of those payments."[38]  With respect to Count 2, Defendant argues that "the Indictment fails to provide the details regarding even one supposedly fraudulent claim that [Defendant] had a hand in submitting.  For instance, there are no details alleged in the Indictment regarding the date any particular claim was submitted, the amount of the claim, the medication at issue, or even who was responsible for processing the claim."[39]

Defendant relies on <u>dicta</u> in a footnote in <u>United States v. Outler,</u> 659 F.2d 1306, 1310 n.5 (5th Cir. 1981), which states:  "Of course, more than the essential elements of an offense is usually necessary [in an indictment].  The defendant must be informed of which transaction, or facts, give rise to the alleged offense."  The court declines to read from <u>Outler's</u> footnote a requirement that the Government exhaustively allege the transactions and participants involved in an offense.  Such a reading would contradict the substantial case law holding that an indictment need not provide that level of detail.  <u>See Rafoi,</u> 60 F.4th at 994 ("To comply with Rule 7(c) . . . an indictment need not provide the evidentiary details of the government's case."); <u>United States v. Richard,</u> 775 F.3d 287, 292 (5th Cir. 2014) ("An indictment need not list every particular of the offense.").[40]  For a conspiracy charge

---

[38]<u>Id.</u>

[39]<u>Id.</u>

[40]<u>See also United States v. Crull,</u> 182 F.3d 915 (5th Cir. 1999) ("There is no requirement, however, that the indictment contain detailed factual descriptions of the offenses charged.").

in particular, it is well established that the indictment does not have to exhaustively allege each of the conspirators and overt acts involved.  United States v. Lance, 536 F.2d 1065, 1068 (5th Cir. 1976) ("We have held that a person can be convicted of conspiring with persons whose names are unknown so long as the indictment asserts that such other persons exist and the evidence [at trial] supports their existence."); United States v. Lam Lek Chong, 544 F.2d 58, 63 (2d Cir. 1976) (It has "long been held that a conspiracy indictment need not allege every overt act committed in furtherance of the conspiracy.").

The Indictment identifies multiple co-conspirators, including Adams and codefendants Simpson-Camp and Bryant, by name and role in the conspiracies.  The Indictment alleges multiple overt acts taken in furtherance of the Count 1 conspiracy, including eight specifically enumerated ones.  The conspiracy offense in Count 2 (18 U.S.C. § 1349) does not require proof of an overt act in furtherance of the conspiracy.  United States v. Njoku, 737 F.3d 55, 67 (5th Cir. 2013).  But even if it did, the "Manner and Means" section of Count 2 alleges actions in furtherance of health care fraud that would qualify, including the submission of claims to DOL-OWCP for prescriptions that were not dispensed or that were not dispensed as billed.  The Indictment provides a "plain, concise, and definite written statement of the essential facts" establishing Counts 1 and 2, and "the elements are described with particularity[.]'" Fed. R. Crim. P. 7(c); Rafoi, 60 F.4th at 993.

The Indictment is therefore sufficient for Defendant to prepare her defense.

## 2.   The Indictment's Allegations of Intent

Defendant argues that Counts 1 and 2 should be dismissed because "there are no facts alleged in the Indictment demonstrating that [Defendant] acted with the requisite intent to pay kickbacks or to commit healthcare fraud."[41]   The Government argues that the Indictment need not allege facts to demonstrate intent and, in the alternative, that "the Indictment is replete with facts suggesting [that Defendant] had the requisite intent."[42]   The intent required by Count 1 is that the Defendant willfully joined in an agreement to defraud the government and to violate 42 U.S.C. § 1320a-7b(b)(2), which in turn prohibits the knowing and willful payment of health care kickbacks.[43]   The intent required by Count 2 is that Defendant willfully joined in an agreement to violate 18 U.S.C. § 1347, which in turn prohibits the knowing and willful execution of a health care fraud with the specific intent to defraud a health care benefit program.[44]

---

[41]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 19.

[42]Government's Response, Docket Entry No. 54, p. 18; id. at 15 (An indictment sufficiently alleges intent "when directly alleging that Defendant acted 'knowingly and willfully,' as the Indictment did for each count.").

[43]Pattern Crim. Jury Instr. 5th Cir. 2.15A, 2.15B (2019); 42 U.S.C. § 1320a-7b(b)(2).

[44]United States v. Sanders, 952 F.3d 263, 273 (5th Cir. 2020); 18 U.S.C. § 1347; Pattern Crim. Jury Instr. 5th Cir. 2.59 (2019).

Defendant cites <u>United States v. Haas,</u> 583 F.2d 216 (5th Cir. 1978), in which a defendant challenged his indictment for "corruptly endeavor[ing] to influence and impede a grand juror[.]" <u>Id.</u> at 218. The defendant argued that the indictment was insufficient because the charge, which required a showing of knowledge and intent, did not expressly use "the terms 'knowledge' and 'intent.'" <u>Id.</u> at 220. The court rejected this argument, reasoning that knowledge and intent were alleged by other language, including the phrases "'corruptly did endeavor'" and "'in an effort to influence and impede[.]'" <u>Id.</u> Defendant argues that "this case presents the opposite side of the [<u>Haas</u>] coin." because "the Government stuck in the statutory 'technical terms' of 'knowing' and 'willful' conduct but failed to allege any facts in support of its theory."[45]

<u>Haas's</u> holding that intent can be alleged implicitly by other language or facts does not mean that an indictment must include factual details supporting its intent allegation. Moreover, the Fifth Circuit has rejected attempts to test the sufficiency of an indictment's factual allegations. In <u>Rafoi,</u> 60 F.4th at 994, the defendants were charged with a Foreign Corrupt Practices Act conspiracy, an element of which is that the defendants were "agents of a domestic concern[.]" <u>Id.</u> at 993 (quoting 15 U.S.C. § 77dd-2). The defendants "argue[d] that the factual allegations in the

---

[45]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 20.

indictment [did] not support the government's conclusion that they
[were] agents of a domestic concern[.]" Id. at 994. The court
rejected this argument, reasoning:

> The indictment specifically alleges that [the defendants]
> acted as "agents of a 'domestic concern' as that term is
> used in the [statute]." . . . [T]he government need not
> describe all evidentiary details establishing the facts
> of the alleged agency relationship.

Id. (internal brackets omitted).

The court is not persuaded that a defendant may challenge an
indictment on the grounds that its factual allegations, taken as
true, do not satisfy an element of the offense. Put another way,
an indictment sufficiently alleges an element by reciting that the
defendant committed it.

Even if Defendant were allowed to make such a challenge, the
Indictment alleges facts from which a jury could conclude that
Defendant acted with the requisite intent. For example, a jury
could infer that Defendant acted willfully from her use of shell
companies to pay the alleged kickbacks, billing for prescriptions
that were not dispensed, submission of test claims that were not
based on a real prescription, and distribution of pre-printed
prescription pads that listed high-reimbursing drugs. Defendant's
challenge to the Indictment's allegations of intent therefore
fails.

3. <u>Double Jeopardy Sufficiency</u>

Defendant argues that "Counts 1 and 2 present double-jeopardy
concerns because they speak in generalities as to the indicted

-18-

conduct."[46]  Defendant points to the Indictment's allegations that she payed "'other marketers'" to induce prescriptions from "'other prescribers[.]'"[47]  She argues that a court evaluating future charges would not be able to tell whether they are based on the same conduct alleged in Counts 1 and 2 of this Indictment.[48]

An indictment must "allow the accused to invoke the double jeopardy clause in any subsequent proceeding." United States v. Lawrence, 727 F.3d 386, 397 (5th Cir. 2013).  If a future indictment charged Defendant with the same offenses as Counts 1 and 2, she might object that the later charges violated the Double Jeopardy Clause.[49]  The future court would have to dismiss the charges "unless the government [could] prove by a preponderance of the evidence that the two conspiracies are factually distinct." United States v. Vasquez-Rodriguez, 978 F.2d 867, 870 (5th Cir. 1992).  The court would consider "(1) time[frame of the alleged conspiracies]; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offense charged that indicates the nature and scope of the activity that the government sought to punish in each case; and (5) places where

---

[46]Id. at 23.

[47]Id. (quoting the Indictment, Docket Entry No. 1, pp. 8-9 ¶ 41).

[48]Id.

[49]This would include 18 U.S.C. § 371, 18 U.S.C. § 1349, and any other statute that constitutes the same offense under Blockburger v. United States, 52 S. Ct. 180 (1932).

the events alleged as part of the conspiracy took place." <u>Id.</u>
Defendant acknowledges that a future court could rely on trial
evidence from this case in deciding whether future charges are
factually distinct from Counts 1 and 2.[50] But Defendant argues that
"they will not be able to do so if jeopardy attaches and [this]
case ends before trial."[51]

Defendant cites <u>United States v. Panzavecchia</u>, 421 F.2d 440
(5th Cir. 1970), in which a defendant was charged with three
identical counts of passing a counterfeit bill in the same
indictment. <u>Id.</u> at 440-41. The defendant was convicted of two of
the three counts. <u>Id.</u> at 441. On appeal, the Fifth Circuit held
that the indictment was insufficient because it "fail[ed] to reveal
which counts the Grand Jury intended to apply to which offenses"
such that "any future pleas of [double jeopardy] are imperiled."
<u>Id.</u> at 442.

Defendant objects to paragraph 41 of the Indictment, which
alleges:

> To induce <u>other prescribers, known and unknown to the
> Grand Jury,</u> to send prescriptions for claimants to
> Advance and TruCare, [Defendant] paid . . . kickbacks and
> bribes to <u>other marketers, known and unknown to the Grand
> Jury</u> . . .[52]

Unlike the allegations in <u>Panzavecchia,</u> paragraph 41 leaves no
doubt as to the scope of included conduct. The Indictment's use of

---

[50]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 23.

[51]<u>Id.</u>

[52]Indictment, Docket Entry No. 1, pp. 8-9 ¶ 41 (emphasis added).

the catch-all categories of "other prescribers" and "other marketers," combined with the all-inclusive phrase "known and unknown to the Grand Jury," reveals that the grand jury meant to include all payments fitting the description in paragraph 41.   On its face, paragraph 41 includes any instance from 2016 through 2022 when Defendant paid a kickback or bribe to any marketer to induce any prescriber to send FECA claimants' prescriptions to Advance or TruCare.   If a future indictment charged Defendant with the same offenses based on a payment fitting that description, the Government could not factually distinguish it from paragraph 41.[53]

Defendant also argues that "the Government's failure to describe what claims submitted to FECA are false or fraudulent leaves [her] open to future proceedings involving potentially the same claims."[54]   Defendant does not cite which portion of the Indictment she is challenging, but she may be referring to the fraudulent "test claims" alleged in paragraphs 23-24, claims for prescriptions that were not dispensed or not dispensed as billed alleged in paragraph 27, or claims for prescriptions that were not medically necessary alleged in paragraph 39.   Although none of these paragraphs single out a particular prescription or claim, they adequately describe a category of prescriptions or claims. Any claim or prescription fitting the fraudulent categories

---

[53]Moreover, because the Government would bear the burden of factually distinguishing future conspiracy charges, ambiguities as to the scope of the Indictment would likely benefit Defendant in such a dispute.

[54]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 23.

described by paragraphs 20-50 would be within the scope of the
Counts 1 and 2 conspiracies for Double Jeopardy purposes.  For
example, any test claim that Defendant or her codefendants
submitted from 2016-2022 that matches the general description in
paragraph 22 would be within the scope of the conspiracies.  The
court is not persuaded that Counts 1 and 2 lack details necessary
for Defendant to raise a Double Jeopardy defense in future
prosecutions.

**B.   Counts 3 through 7**

Defendant argues that Counts 3 through 7 are deficient because
"[a]lthough the Government provides details of each transaction
that it claims constitutes an improper kickback, it fails to
include any allegations demonstrating that [Defendant] knew the
payments being made were improper."[55]  The Government responds that
the Indictment is sufficient because it alleges that Defendant
acted with the required statutory intent and, in the alternative,
that "the Indictment is replete with facts suggesting she had the
requisite intent."[56]

As explained above, the Indictment is sufficient if it alleges
that Defendant acted with the intent required by the relevant
statute.  The statute prohibits the knowing and willful payment of
health care kickbacks.  See 42 U.S.C. § 1320a-7b(b)(2) ("Whoever
knowingly and willfully offers or pays any remuneration . . .");

---

[55]Id.

[56]Government's Response, Docket Entry No. 54, p. 18.

Pattern Crim. Jury Instr. 5th Cir. 2.109B (2019) (The Government must prove "[t]hat the defendant acted knowingly and willfully when paying [offering to pay] the remuneration."). Because Counts 3 through 7 allege that Defendant "knowingly and willfully" offered and paid the alleged kickbacks, they adequately allege intent.[57] Defendant's Motion to Dismiss will therefore be denied as to Counts 3 through 7.

## C.    Count 8

Defendant argues that Count 8 "must be dismissed to the extent that it punishes [her] for many of the same transactions at issue under Counts 3 through 7."[58] Count 8 charges Defendant with Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). In particular, Count 8 alleges that Defendant conspired to violate 18 U.S.C. § 1956(a)(1)(B)(i), which prohibits transacting in proceeds from specified unlawful activity "knowing that the transaction is designed . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds."[59] The "Manner and Means" of the conspiracy incorporate paragraphs 20-50 of the Indictment, including the allegations in paragraphs 34-35 that Defendant paid kickbacks to

---

[57]Indictment, Docket Entry No. 1, p. 16 ¶ 61.

[58]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 24.

[59]Count 8 further alleges that Defendant conspired to violate 18 U.S.C. § 1957, which prohibits "knowingly [engaging] in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity[.]"

-23-

Adams, often through the shell companies Era Remodeling Corp. and Taxx Corp.    The payments on which Counts 3 through 7 are based match the category described in paragraphs 34-35.

Defendant cites <u>United States v. Santos,</u> 128 S. Ct. 2020 (2008), and cases applying it.    In <u>Santos</u> the defendant was convicted of running an illegal lottery and two counts of money laundering.    <u>Id.</u> at 2023.    The money laundering counts were violations  of  18  U.S.C.  §  1956(a)(1)(A)(i),  which  prohibits conducting transacting in the "proceeds of specified unlawful activity . . . (A)(I) with the intent to promote the carrying on of specified unlawful activity[.]"  <u>Id.</u> n.1 (emphasis added) (quoting 18  U.S.C.  §  1956(a)(1)).    On  collateral  review  the  defendant challenged his money laundering convictions on the ground that "proceeds" meant profits of the unlawful activity — not the gross receipts of such activity.  <u>Id.</u> In other words, the case addressed whether  the  statute  reaches  transactions  that  merely  pay  the "essential expenses"  of the underlying crime.  <u>See id.</u> at 2033 (Stevens, J., concurring). The Supreme Court affirmed the reversal of the defendant's money laundering convictions without a majority opinion.    The  plurality  opinion  stated  that  "proceeds"  was ambiguous  and  that  the  rule  of  lenity  required  the  court  to interpret it narrowly as profits.  <u>Id.</u> at 2025 (plurality).    The plurality emphasized that interpreting "proceeds" as gross receipts would potentially raise a "merger problem."  <u>Id.</u> at 2026.  That is, under the gross-receipts definition, "nearly every violation of the illegal-lottery  statute  would  also  be  a  violation  of  the

money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery." Id. at 2026. The plurality doubted that Congress could not have intended this result, emphasizing that the money laundering statute's twenty-year maximum sentence would obviate the significance of the lottery statute's five-year maximum. See id. As described by the concurrence, the merger problem was that "[a]llowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy[.]" Id. at 2033 (Stevens, J., concurring). The concurrence stated that this would be a "perverse result" that "Congress could not have intended[.]" Id. In summary, both opinions doubted that Congress intended to authorize money laundering punishment for merely paying the expenses of the underlying lottery crime. But neither opinion stated that Congress could not define "proceeds" to include gross receipts. The precedential definition, expressed by the concurrence, was that "proceeds" excludes "the essential expenses of operating" an illegal lottery. Id. at 2033.

In 2009 Congress amended the statute to define "proceeds" as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity[.]" 18 U.S.C. § 1956(c)(9) (emphasis added). "This amendment effectively overruled Santos and applies prospectively." United States v. Lineberry, 702 F.3d 210, 212 n.2 (5th Cir. 2012).

Defendant cites several opinions applying <u>Santos,</u> but each of them involved transactions that occurred before Congress's amendment. <u>See Lineberry,</u> 702 F.3d at 211, 212 n.2; <u>United States v. Kennedy,</u> 707 F.3d 558, 563 n.13 (5th Cir. 2013) ("In May 2009, after the transactions at issue here occurred, Congress amended the money-laundering statute to define 'proceeds' . . . .").[60] But because Defendant's alleged money laundering conduct occurred well after Congress defined proceeds to include gross receipts, <u>Santos</u> has no application in this case.[61] Defendant's Motion to Dismiss will therefore be denied as to Count 8.

---

[60]<u>See also United States v. Cloud,</u> 680 F.3d 396, 409 n.6 (4th Cir. 2012) ("Following the Court's holding in <u>Santos,</u> Congress amended the money-laundering statute to provide a definition of 'proceeds.' . . . As amended, the statute defines 'proceeds' broadly as . . . 'including the gross receipts of such activity.' . . . Thus the issue we address today is not likely to arise in many more cases.").

[61]Even if <u>Santos</u> still applied, Count 8 would not "merge" with Counts 3 through 7 merely because they are based in part on the same payments. Count 8 alleges that Defendant conspired to violate § 1956(a)(1)(B)(i), which prohibits <u>disguised</u> payments, and § 1957, which targets transactions in "criminally derived property." Because health care kickbacks may or may not be disguised, a violation of § 1956(a)(1)(B)(i) is not inherent in paying health care kickbacks. <u>See United States v. Esquenazi,</u> 752 F.3d 912, 935 (11th Cir. 2014) ("We first observe that there is a distinction between a promotional money-laundering conviction under § 1956(a)(1)(A)(i) (<u>i.e.,</u> using funds from a criminal business to 'promote the carrying on of [the] specified unlawful activity'), like the one at issue in <u>Santos,</u> and a <u>concealment</u> money-laundering conviction under 18 U.S.C. § 1956(a)(1)(B)(i), like Mr. Rodriguez's. This difference eliminates entirely for this case any double-punishment concern, like the one that motivated a majority of the Justices in <u>Santos.</u>"). As for § 1957, <u>Santos</u> did not apply to begin with because the statute does not use the term "proceeds."

**D.   Bill of Particulars**

In the alternative to dismissal, Defendant asks the court to order the Government to provide a bill of particulars.  Rule 7(f) states that the "court may direct the government to file a bill of particulars."  Fed. R. Crim. P. 7(f).  "The defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits."  Id.[62]  "'A defendant possesses no right to a bill of particulars.'"  United States v. Davis, 53 F.4th 833, 845 (5th Cir. 2022) (quoting United States v. Burgin, 621 F.2d 1352, 1358 (5th Cir. 1980)).  "'The denial of a bill of particulars is within the sound discretion of the trial judge.'"  Id. (quoting United States v. Lavergne, 805 F.2d 517, 520 (5th Cir. 1986)).  "A bill of particulars is designed 'to apprise the defendant of the charge against him with sufficient precision to enable him to prepare his defense.'"  Id. (quoting United States v. Montemayor, 703 F.2d 109, 117 (5th Cir. 1983)).  "But '[i]t is not designed to compel the government to detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial.'"  Id. (quoting Burgin, 621 F.2d at 1359).

As explained above, the Indictment sufficiently alleges the charges, allows Defendant to prepare her defense, and provides enough detail for her to raise a Double Jeopardy defense in future

---

[62]As Defendant acknowledges, "the initial time for motions for bills of particulars has passed[.]"  Defendant's Motion to Dismiss, Docket Entry No. 51, p. 27.

prosecutions.    The  court  acknowledges  that  the  universe  of
transactions  that  could  be  implicated  by  the  Indictment  may  be
large,  particularly  the  prescribing  history  of  involved  physicians
and  Defendant's  dispensing  and  billing  history.    But  the  risk  of
surprise  at  trial  is  minimal  for  several  reasons.    First,  the
Government  has  agreed  to  provide  the  names  of  the  "other
prescribers"  and  "other  marketers"  referenced  in  paragraph  41.[63]
Second,  the  Government  must  disclose  documentary  evidence  that  it
intends  to  introduce  in  its  case-in-chief.    Fed.  R.  Crim.  P.
16(a)(1)(E).    Third,  the  Government  must  disclose  "a  complete
statement  of  all  opinions  that  the  government  will  elicit"  from  any
expert  witness  it  calls  and  "the  bases  and  reasons  for"  those
opinions.    Fed.  R.  Crim.  P.  16(a)(1)(G)(iii).    The  court  is
confident  that  these  disclosures  will  give  Defendant  a  fair
understanding  of  which  payments,  prescriptions,  dispensing,  and
billing  warrant  focus  in  preparing  for  trial.    Therefore,
Defendant's  request  for  a  bill  of  particulars  will  be  denied.

## IV.  Conclusion and Order

Regarding  Counts  1  and  2,  the  Indictment  is  sufficient  for
Defendant  to  prepare  her  defense,  sufficiently  alleges  that
Defendant  acted  with  the  requisite  intent,  and  provides  enough
detail  for  Defendant  to  raise  a  Double  Jeopardy  defense  in  future

---

[63]Government's Response, Docket Entry No. 54, p. 16.

-28-

prosecutions.     Counts 3 through 7 sufficiently allege that Defendant acted with the requisite intent.  Count 8 does not merge with Counts 3 through 7.  Moreover, Defendant has not demonstrated that a bill of particulars is warranted.  For these reasons, Shalondria R. Simpson's Motion to Dismiss Counts 1 Through 8 of the Indictment (Docket Entry No. 51) is **DENIED.**

**SIGNED** at Houston, Texas, on this 26th day of March, 2024.

_____
SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE