United States District Court
Southern District of Texas
**ENTERED**
August 25, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-23-415-01 |
| | § | |
| SHALONDRIA SIMPSON, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

A grand jury charged Shalondria Simpson ("Defendant") in a thirteen-count Indictment.[1] Pending before the court is Defendant Shalondria R. Simpson's Motion to Dismiss Count One Insofar as it Alleges a Conspiracy with Co-Defendant Lashondria Simpson-Camp ("Defendant's Second Motion to Dismiss") (Docket Entry No. 110). For the reasons stated below, Defendant's Second Motion to Dismiss will be denied.

## I. Background

On September 7, 2023, a grand jury in the Southern District of Texas returned a thirteen-count Indictment.[2] The Indictment charges Defendant with Conspiracy to Defraud the United States and to Pay and Receive Healthcare Kickbacks (Count 1), Conspiracy to Commit Health Care Fraud

[1]Indictment, Docket Entry No. 1, pp. 1, 11, 14, 16-17, 19. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system. The court refers to the Unites States of America as "the Government."

[2]Id.

(Count 2), Payment of Health Care Kickbacks (Counts 3 through 7), Conspiracy to Commit Money Laundering (Count 8), and Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity (Counts 9 through 13).[3]

The Indictment alleges that Defendant owned Texas pharmacies Advance Pharmacy, LLC ("Advance") and Eclectic Rx Consulting Inc. DBA TruCare Pharmacy ("TruCare").[4] The Federal Employees Compensation Act ("FECA") pays workers' compensation benefits, including medical care and prescription drugs, to federal employees who suffer injury, disease, or death on the job.[5] Advance and TruCare were enrolled as health care providers with the Department of Labor Office of Worker's Compensation ("DOL-OWCP"), which administers FECA.[6]

Count 1 of the Indictment charges Defendant and codefendants, Shayla Bryant and Lashondria Simpson-Camp, M.D., with conspiring to defraud the United States and to pay and receive health care kickbacks in violation of 18 U.S.C. § 371.[7] The Indictment describes Dr. Camp's role in the conspiracy as follows:

> To induce [Dr. Camp] to refer prescriptions for high-reimbursing drugs, billable to FECA, to Advance and TruCare, [Defendant] offered to pay, and paid, $1.65 million in kickbacks and bribes to [Dr. Camp] so that [Dr. Camp] could purchase Accuhealth with the understanding that, in exchange for these kickbacks and bribes, [Dr. Camp] would refer prescriptions payable by FECA to Advance and TruCare. [Dr. Camp] received these kickbacks and bribes through TruEssence. After acquiring

---

[3] Id.

[4] Id. at 1 ¶¶ 1-2, p. 2 ¶ 6.

[5] Id. at 3 ¶¶ 12, 14.

[6] Id. at 5 ¶ 21.

[7] Id. at 11 ¶ 52. The Indictment alleges that Shayla Bryant was a pharmacist and Pharmacy Business Manager at Advance and TruCare. Id. at 2 ¶ 8. The Indictment alleges that Lashondria Simpson-Camp, M.D., was a physician licenced in Texas. Id. ¶ 7.

> Accuhealth, [Dr. Camp], changed and caused other to change, Accuhealth's claimants' "Preferred Pharmacy" to TruCare, and referred prescriptions for high-reimbursing drugs, using pre-printed prescription pads, to TruCare and Advance in furtherance of the scheme. Between in or around March 2018, and May 2022, FECA paid TruCare and Advance at least $7 million for prescriptions [Dr. Camp], her nurse practitioner, and other Accuhealth prescribers referred to TruCare in exchange for kickbacks and bribes.[8]

Count 1 further alleges that Dr. Camp committed the following overt acts in furtherance of the conspiracy:

> b. On or about March 8, 2018, [Defendant] paid $500,000 to [Dr. Camp] by check from the Advance Operating Account, made out to "Tru Essence Cosmetic + Medical Spa."
>
> c. On or about March 16, 2018, [Defendant] paid $1,150,000 to [Dr. Camp] by check from the Advance Operating Account, made out to "Tru Essence Cosmetic Spa."
>
> . . .
>
> e. On or about November 12, 2019, [Dr. Camp] sent an email to [Defendant] with the subject line "One other thing," including a message about prescription referrals from Accuhealth to TruCare and Advance, that stated: "I would like to see each month how much money is coming in on your end from the scripts we write. Let's face it, the amount may not be what you thought it was going to be when you bought the clinic, but it's more than what you would have coming in otherwise."
>
> f. On or about November 13, 2019, [Defendant] responded to [Dr. Camp] by email: "The agreement we made before I bought the clinic was that all prescriptions would be coming to my pharmacy. Otherwise I would not have bought Accuheatlh [sic] for 2.5 million dollars."[9]

On January 29, 2024, Defendant filed a motion to dismiss, asking the court to dismiss Counts 1 through 8.[10] On March 26, 2024, the court entered a Memorandum Opinion and Order denying

---

[8]Id. at 7 ¶¶ 30–33.

[9]Id. at 13-14 ¶ 55(a)-(f).

[10]Defendant's Motion to Dismiss, Docket Entry No. 51, p. 7.

Defendant's motion to dismiss.[11] In denying the motion to dismiss, the court noted that it was "not persuaded that a defendant may challenge an indictment on the grounds that its factual allegations, taken as true, do not satisfy an element of the offense" and further noted that the Indictment provided "a plain, concise, and definite written statement of the essential facts."[12]

On July 15, 2026, Defendant filed her Second Motion to Dismiss, arguing that Count 1 of the Indictment should be dismissed to the extent it rests on the alleged conspiracy between Defendant and Dr. Camp.[13] The Government filed its response on August 7, 2026, arguing that the Indictment sufficiently alleges an Anti-Kickback Statute offense.[14]

---

[11]Memorandum Opinion and Order, Docket Entry No. 56.

[12]Id. at 18.

[13]Defendant's Second Motion to Dismiss, Docket Entry No. 110, p. 2.

[14]United States' Response in Opposition to Defendant Shalondria Simpson's Motion to Dismiss Count One Insofar as it Alleges a Conspiracy with Co-defendant Lashondria Simpson-Camp ("Government's Response"), Docket Entry No. 116. The Anti-Kickback Statute is codified at 42 U.S.C. § 1320a-7b(b)(2). It reads as follows:

(b) Illegal Remunerations

. . .

> (2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person–
>
> > (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
> >
> > (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program

(continued...)

## II. Legal Standard

Federal Rule of Criminal Procedure 7(c)(1) states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Moreover the Sixth Amendment secures the right of a criminal defendant "to be informed of the nature and cause of the accusation" against her. U.S. Const., amend. VI.[15] "'An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense.'" United States v. Rafoi, 60 F.4th 982, 993 (5th Cir. 2023) (quoting United States v. Fairley, 880 F.3d 198, 206 (5th Cir. 2018)).

"An indictment is intended to provide notice to the defendant that allows her to intelligently consider her defense or plea." United States v. Grant, 850 F.3d 209, 214 (5th Cir. 2017) (internal brackets omitted). "An indictment need not list every particular of the offense." United States v. Richard, 775 F.3d 287, 292 (5th Cir. 2014) (rejecting argument that a bribery indictment was required to specify "which transaction was the subject of the bribe, and the name of the particular person from whom [the defendant] allegedly accepted a bribe"). United States v. Richard, 775 F.3d 287, 292 (5th Cir. 2014).

---

[14](...continued)

> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

[15]The sufficiency of an indictment is also governed by the Fifth Amendment right to indictment by grand jury, which must find probable cause that the defendant committed each element of the charged offense. See United States v. Davis, 53 F.4th 833, 845 (5th Cir. 2022)

## III. Analysis

Defendant argues that Count 1 should be dismissed because it fails to allege an Anti-Kickback Statute offense as to Dr. Camp.[16] Specifically, Defendant argues that Count 1 fails to allege that (1) Dr. Camp received an unlawful remuneration in the form of a bribe or kickback, and (2) the remuneration allegedly paid to Dr. Camp was derived from federal reimbursements.[17]

**A. The indictment sufficiently alleges an unlawful remuneration.**

Relying on an email between Dr. Camp and Defendant to establish that the $1.65 million was a loan, Defendant argues that Count 1 should be dismissed because a loan is not a remuneration within the meaning of the Anti-Kickback statute.[18]

The Anti-Kickback statute reaches "whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person" to refer individuals for items or services or to order or recommend ordering items or services payable in whole or in part by a federal health care program. 42 U.S.C. § 1320a-7b(b)(2). "[A]ny remuneration" encompasses any transfer of value – including a transfer of $1.65 million to acquire a medical clinic. Whether Defendant and Dr. Camp intended the $1.65 million payment to be a loan goes to their intent, which is a question for the jury. United States v. Burger, 170 F.4th 395, 404 (5 th Cir. 2026) ("In Mann, we expressly disapproved

---

[16] Defendant's Second Motion to Dismiss, Docket Entry No. 110, p. 4.

[17] Id. at 4–9.

[18] Id. at 4.

of a district court's considering evidence tending to rebut an allegation of willfulness, a subjective mental state, at the motion-to-dismiss stage.").

Defendant also argues that Count 1 should be dismissed because it does not sufficiently allege a quid pro quo given that Defendant loaned Dr. Camp $1.65 million so that she could purchase a clinic and Defendant made the payment to Dr. Camp before Dr. Camp began referring prescriptions to Advance and TruCare.[19]

The Indictment alleges that Defendant paid Dr. Camp "$1.65 million in kickbacks and bribes . . . so that [Dr. Camp] could purchase Accuhealth with the understanding that, in exchange for these kickbacks and bribes, [Dr. Camp] would refer prescriptions payable by FECA to Advance and TruCare."[20] The Anti-Kickback statute applies to any payment used to induce a person to refer individuals for items or services payable in whole or in part by a federal health care program. "Whether the remuneration is paid before a referral, as alleged with Dr. Camp, or is offered as a percentage of reimbursement, as alleged for [other participants], is a difference in payment schedule, not in the crime."[21] An upfront payment to Dr. Camp in exchange for a referral commitment falls squarely within the statute's terms.

**B. The Government does not have to allege that the kickback is tied to federal funds.**

Defendant argues that Count 1 fails to allege that the $1.65 million payment came from reimbursements made by a federal health care program or that any portion of the funds received from FECA "were ever paid, transferred, shared, or kicked back to Dr. Camp."[22]

---

[19]Id. at 6–7.

[20]Indictment, Docket Entry No. 1, p. 7 ¶ 30.

[21]Government's Response, Docket Entry No. 116, p. 5.

[22]Defendant's Second Motion to Dismiss, Docket Entry No. 110, pp. 7–9. Defendant also (continued...)

However, nothing in the text of the Anti-Kickback Statute requires that the kickback funds be traced to federal dollars.[23] Section 1320a-7b(b)(2) simply requires that the items or services that are being prescribed are payable "in whole or in part under a federal health care program." Here, that nexus is expressly allege. The referred prescriptions were "payable by FECA", which is alleged to be a federal health care program.[24]

**C. Defendant's remaining arguments are irrelevant as to whether the Indictment is sufficient.**

Defendant argues that Count 1 should be dismissed because the facts more closely resemble a civil Stark Law violation than a criminal kickback scheme.[25] The existence of a civil regulatory regime governing physician financial relationships does not narrow the Anti-Kickback Statute or immunize conduct that satisfies its elements.

Defendant also argues that the indictment's allegations as to the other participants "underscore the deficiency of the allegations as to Dr. Camp."[26] Even if the allegations as to the

---

[22](...continued)
argues that the Government must choose between calling the $1.65 million payment an inducement or a kickback, and that if it is a kickback, the Government must allege that the money was tied to a federal health care source. Id. at 6. However, "kickbacks" and "bribes" are "not standalone offenses with distinct elements between which the Government must elect. Instead, they are illustrative examples within the statutory phrase 'any remuneration (including any kickback, bribe, or rebate).'" Government's Response, Docket Entry No. 116, p. 5 (quoting § 1320a-7b(b)(2)).

[23]Defendant cites United States v. Cooper, 38 F.4th 428 (5th Cir. 2022), and United States v. Shah, 95 F.4th 328 (5th Cir. 2024), to support her argument that § 1320a-7b(b)(2) imposes a tracing requirement. But neither case imposes such a requirement. Cooper dealt with whether a defendant could be convicted under § 1320a-7b(b) for paying TRICARE beneficiaries for self referrals. Shah dealt with whether a defendant could be convicted under § 1320a-7b(b) if he did not know a federal health care program was paying for the services he induced through kickbacks.

[24]Indictment, Docket Entry No. 1, p. 7 ¶ 30.

[25]Defendant's Second Motion to Dismiss, Docket Entry No. 110, pp. 9–10.

[26]Id. at 10–11.

other participants include additional details, that does not support dismissal of Count 1 as to Dr. Camp. As discussed above, Count 1 sufficiently alleges an Anti-Kickback Statute offense as to Dr. Camp.

## IV. Conclusion and Order

For the reasons explained above, Defendant Shalondria R. Simpson's Motion to Dismiss Count One Insofar as it Alleges a Conspiracy with Co-Defendant Lashondria Simpson-Camp (Docket Entry No. 110) (Docket Entry No. 51) is **DENIED**.

**SIGNED** at Houston, Texas, on this 25th day of August, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE